936 So.2d 11 (2006)
M. Phillip CARNES and Ann T. Carnes, Appellants,
v.
T.D. FENDER, Appellee.
No. 4D04-3100.
District Court of Appeal of Florida, Fourth District.
May 17, 2006.
Rehearing Denied September 8, 2006.
*12 Brenda J. Carter, Fort Lauderdale, and Jack Scarola of Searcy Denney Scarola Barnhart & Shipley, West Palm Beach, for appellants.
Michael J. Napoleone and Gerald F. Richman of Richman Greer Weil Brumbaugh Mirabito & Christensen, P.A., West Palm Beach, for appellee.
DONNER, AMY STEELE, Associate Judge.
Appellants, M. Phillip Carnes and Ann T. Carnes ("the Carneses"), appeal the decision of the trial court granting summary judgment in favor of Appellee, T.D. Fender ("Fender"), on the allegations of fraudulent conveyance, piercing the corporate veil, and continuation of business. Both the Carneses and Fender have requested attorney's fees. We have jurisdiction. See Fla. R.App. P. 9.030(b)(1)(A).
*13 We review the trial court's grant of summary judgment de novo. See Volusia County v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 130 (Fla.2000). Because material issues of fact remain, we find that summary judgment should not have been granted. Accordingly, we reverse and remand.

I. FACTS AND PROCEDURAL POSTURE
The events precipitating the underlying suit on appeal have previously been reviewed by this Court. See Great Harbour Cay Realty & Inv. Co. v. Carnes, 862 So.2d 63 (Fla. 4th DCA 2003). The first suit was based on the Carneses' claim against Great Harbour Cay Realty & Investment Company ("Great Harbour") for non-payment under an employment contract.[1] The Carneses ultimately prevailed with a jury verdict awarding $3 million in damages. Following entry of this verdict, Great Harbour filed for bankruptcy protection. This Court reversed the judgment entered in the prior action. Id. at 65.
As a result of the Carneses' inability to collect on the damages award, the instant suit was filed against Fender, personally, based on theories of fraudulent conveyance, piercing the corporate veil of Great Harbour, and continuation of business/alter ego. Each of these claims attempts to show that Fender, as "sole shareholder and decision maker of [Great Harbour]," was responsible for depleting Great Harbour's assets such that the Carneses could not receive payment on the judgment. In the fraudulent conveyance claim, the Carneses allege that Fender transferred assets owned by Great Harbour after the July 1992 financial report of Ernst and Young listed the value of the company to be approximately $30 million. Mr. Carnes was terminated in September 1992. In their claim to pierce the corporate veil, the Carneses allege that Fender co-mingled his personal assets and other corporations' assets and used Great Harbour's corporate identity as a sham to defraud investors. Similarly, in their claim under a continuation of business theory, the Carneses claim that Fender continued to conduct the business of Great Harbour under other corporate names. All of these claims are based on fraud.
Fender moved for summary judgment, claiming the Carneses failed to produce evidence (1) that a crown grant was issued in 1992; (2) that any assets were fraudulently transferred; (3) showing that Great Harbour continued business under a different name; and (4) showing the requisite fraud required to justify piercing the corporate veil. In support of his motion, Fender provided personal affidavits, deposition transcripts, and official documents related to the crown grant. In opposition, the Carneses filed the transcript of the previous trial, Mr. Carnes' affidavit, the deposition transcripts of Mr. and Mrs. Carnes, a March 1992 cash flow spreadsheet, and the July 31, 1992 financial report by Ernst and Young. The trial court granted summary judgment, finding that the Carneses had presented no evidence to prove any of their claims.

II. MOTION FOR SUMMARY JUDGMENT STANDARD
Summary judgment is not available where material issues of fact remain. See *14 Fla. R. Civ. P. 1.510(c); Whitten v. Progressive Cas. Ins. Co., 410 So.2d 501, 506 (Fla.1982). In determining whether to grant a motion for summary judgment, all facts must be taken in the light most favorable to the non-moving party. Moore v. Morris, 475 So.2d 666, 668 (Fla.1985). Factual questions presented by the evidence should be determined by a jury where the evidence conflicts, permits different inferences, or tends to prove the issues. Id. "An inference is a permissible deduction from the evidence which the jury may reject or accord such probative value as it desires, and it is descriptive of the factual conclusion that a jury may draw from sufficient circumstantial evidence." Little v. Publix Supermarkets, Inc., 234 So.2d 132, 133-34 (Fla. 4th DCA 1970) (citation omitted). In determining whether issues of fact precluding summary judgment remain, the facts must be taken "in the light most favorable to the nonmoving party." Turner v. PCR, Inc., 754 So.2d 683, 684 (Fla.2000).
The party moving for summary judgment has the initial burden of demonstrating the nonexistence of material issues of fact. Lenhal Realty, Inc. v. Transamerica Commercial Fin. Corp., 615 So.2d 207, 208 (Fla. 4th DCA 1993). Only after "the movant has tendered competent evidence in support of its motion does the burden shift and fall on the other party to come forward with opposing evidence to show that a question of material fact exists." Id.; Hamilton v. Bank of Palm Beach & Trust Co., 348 So.2d 1190, 1191 (Fla. 4th DCA 1977). To avoid summary judgment, a litigant does not have to provide clear and convincing evidence that issues of material fact exist. Collins v. Brigman, 428 So.2d 373, 374 (Fla. 5th DCA 1983). For purposes of a motion for summary judgment, "it should be assumed that every fact as to which the party moved against has any appreciable evidence may at a trial be established to the satisfaction of a jury." Connolly v. Sebeco, Inc., 89 So.2d 482, 484 (Fla.1956) (emphasis added).

III. FRAUDULENT CONVEYANCE
Summary judgment is rarely utilized in fraudulent conveyance cases. See Amjad Munim, M.D., P.A. v. Azar, 648 So.2d 145, 153 (Fla. 4th DCA 1994). Here, material issues of fact remain regarding the Carneses' claim of fraudulent conveyance, precluding summary judgment. During the hearing on the motion for summary judgment, Fender presented sufficient evidence to shift the burden to the Carneses. Fender relied on Mr. Carnes' deposition to show that Mr. Carnes stated that the crown grant was not intended to be received by Great Harbour, that the grant was not worth $30 million in July 1992, and that Mr. Carnes did not know of any assets that were transferred from Great Harbour to another company. However, the Carneses presented certain purported admissions of Fender to show that issues of material fact remain. According to the evidence in the record, Mr. Carnes claimed that Fender informed him that Great Harbour was the parent company through which the business would be conducted. Great Harbour would also control all related assets either directly or through wholly owned subsidiaries. Additionally, Mr. Carnes asserts that Fender told him Great Harbour was worth $30 million. Ernst and Young, in its July 1992 statement, declared the same $30 million value. Such evidence is sufficient to constitute the scintilla of appreciable evidence required to defeat a motion for summary judgment. The evidence presented by Fender conflicted with that presented by the Carneses. Therefore, the trial court erred in granting summary judgment on the allegation that Fender fraudulently transferred assets.

*15 IV. GREAT HARBOUR AS A "SHAM CORPORATION" AND CONTINUING BUSINESS UNDER AN ALTER EGO THEORY: EVIDENCE PRESENTED WAS SUFFICIENT TO WITHSTAND SUMMARY JUDGMENT

In Riley v. Fatt, 47 So.2d 769, 773 (Fla.1950), the Florida Supreme Court stated that "the corporate veil will not be pierced, either at law or in equity, unless it be shown that the corporation was organized or used to mislead creditors or to perpetrate a fraud upon them." Fender contends that the Carneses are unable to satisfy these elements. Specifically, Fender presented evidence that Mr. Carnes was responsible for establishing Great Harbour and the associated corporation, Great Harbour Development. Fender also contended that the Carneses could not establish that they were defrauded because the crown grant was not intended for Great Harbour or obtained prior to their employment termination. Finally, Fender asserted that he did not co-mingle his personal funds with that of the corporations. Mr. Carnes' affidavit contradicts these assertions in several ways. Mr. Carnes claims that Fender admitted transferring assets amongst the corporations without regard to their separate legal status and fabricating promissory notes from Great Harbour.
The following reasonable inferences can be drawn from the conflicting evidence: (1) the transfers took place prior to the Carneses' termination or (2) the transfers took place afterward in order to defraud the Carneses. Either inference is sufficient to preclude summary judgment. See Reeves v. N. Broward Hosp. Dist., 821 So.2d 319 (Fla. 4th DCA 2002); Byrd v. Leach, 226 So.2d 866, 868 (Fla. 4th DCA 1969). Therefore, summary judgment was inappropriate on the issue of the Carneses' ability to pierce the corporate veil and the continuation of business theory.

V. APPELLATE ATTORNEY'S FEES
Fender requests appellate attorney's fees based on his offers for settlement in the amount of $1,000.00. The settlement offers additionally required voluntary dismissal and execution of a general release. As the proposal for settlement lacked the specificity required, Fender's request for attorney's fees is denied. See Fla. R. Civ. P. 1.442(c)(2)(D); Swartsel v. Publix Super Markets, Inc., 882 So.2d 449, 453 (Fla. 4th DCA 2004).
Likewise, the Carneses' request for fees is denied. Their request is based on the premise that Fender is inappropriately requesting fees because the settlement offers were invalid. See § 57.105, Fla. Stat. (2005). However, a party cannot receive fees for the time spent litigating fees. Mediplex Constr. of Fla., Inc. v. Schaub, 856 So.2d 13 (Fla. 4th DCA 2003). Therefore, the Carneses' request for appellate fees is denied.
Reversed and Remanded.
GUNTHER and FARMER, JJ., concur.
NOTES
[1] Mr. Carnes entered into an employment agreement with Great Harbour, which provided certain severance pay provisions. Mr. and Mrs. Carnes were terminated by Great Harbour for failure to timely obtain a crown grant in order to transfer land from the Bahamian Government. In that suit, Fender claimed the corporation was worth nothing, contrary to documentation indicating that, prior to the Carneses' termination, the corporation was worth approximately $30 million.