964 So.2d 889 (2007)
Joseph MOURNING and Taneisha Mourning, Appellants,
v.
BALLAST NEDAM CONSTRUCTION, INC., a foreign corporation, Appellee.
No. 4D06-2557.
District Court of Appeal of Florida, Fourth District.
September 26, 2007.
Roy W. Jordan, Jr. of Roy W. Jordan, Jr., P.A., West Palm Beach, for appellants.
Sylvia H. Walbolt and Laura W. Paquin of Carlton Fields, P.A., Tampa, and Dean A. Morande of Carlton Fields, P.A., West Palm Beach, for appellee.

CORRECTED OPINION
HAZOURI, J.
We withdraw our prior opinion, and substitute the following corrected opinion in its place.
*890 Joseph and Taneisha Mourning (Mourning) appeal from a non-final order granting Ballast Nedam Construction, Inc.'s (Ballast) motion to vacate the final judgment which had been entered in favor of Mourning.
The issue before this court is whether the trial court reversibly erred in vacating the final judgment against Ballast based on the trial court's failure to serve Ballast with the order resetting the trial on damages. Mourning contends the trial court's failure to serve the order was remedied by Mourning subsequently mailing Ballast a copy of the order. We agree and reverse.
In April of 2003, Joseph Mourning was involved in a single-car automobile accident while driving on a road that was under construction. Mourning and his wife subsequently filed a lawsuit against Ballast, alleging that Ballast negligently maintained the construction site. A default was entered against Ballast for failing to respond to the complaint.[1]
After entering the default on liability, the trial court entered an order dated April 22, 2005, setting the trial on the unliquidated damages to be held during the September 12, 2005, docket. This order was not served on Ballast by the court or Mourning at the time of its entry. However, Mourning subsequently mailed a copy of the order to Ballast which was received by Ballast in June 2005. This case was not reached on the trial docket of September 12, 2005 and thereafter Mourning sought a special trial date. In response to Mourning's request, the trial court entered an order on October 5, 2005, resetting the trial for an eight-week trial docket beginning November 7, 2005.
On October 15, 2005, Mourning mailed a copy of the court's order to Ballast.[2] On December 12, 2005, the court conducted a jury trial on Mourning's unliquidated damages. Ballast failed to appear for the trial. A verdict in the amount of $1,155,000 was entered in favor of Mourning. Final judgment was entered on May 24, 2006, and amended on June 6, 2006, to add Ballast's insurer to the final judgment.
On June 8, 2006, Ballast filed a motion to vacate the default judgment. Ballast argued that the damages judgment was inappropriately entered and violated due process because Mourning, not the trial court, had served Ballast with the order resetting the trial on damages. By way of this motion, Ballast sought to have the damages judgment set aside only on that specific basis. Ballast filed a separate motion to set aside the entire default based on excusable neglect, which is not the subject of this appeal.
At the hearing on Ballast's motion to vacate the default judgment, the trial court acknowledged that it did not serve a copy of the order resetting the damages trial and concluded that, even though Ballast received a copy of the order mailed by Mourning, the amended final judgment had to be set aside because of the due process violation caused by the court's failure *891 to serve the order setting trial in accordance with the requirements of Florida Rule of Civil Procedure 1.440(c).
Florida Rule of Civil Procedure 1.440(c) provides:
(c) Setting for Trial. If the court finds the action ready to be set for trial, it shall enter an order fixing a date for trial. Trial shall be set not less than 30 days from the service of the notice for trial. By giving the same notice the court may set an action for trial. In actions in which the damages are not liquidated, the order setting an action for trial shall be served on parties who are in default in accordance with rule 1.080(a).
Florida Rule of Civil Procedure 1.080(a) provides:
(a) Service; When Required. Unless the court otherwise orders, every pleading subsequent to the initial pleading and every other paper filed in the action, except applications for witness subpoena, shall be served on each party. No service need be made on parties against whom a default has been entered, except that pleadings asserting new or additional claims against them shall be served in the manner provided for service of summons.
Although rule 1.080(a) provides that pleadings and papers generally need not be served upon a defaulted party, Florida Rule of Civil Procedure 1.080(h)(1)-(3) requires service of an order setting an action for trial and the final judgment.
Florida Rule of Civil Procedure 1.080(h)(1)-(3) provides:
(h) Service of Orders.
(1) A copy of all orders or judgments shall be transmitted by the court or under its direction to all parties at the time of entry of the order or judgment. No service need be made on parties against whom a default has been entered except orders setting an action for trial as prescribed in rule 1.440(c) and final judgments that shall be prepared and served as provided in subdivision (h)(2). The court may require that orders or judgments be prepared by a party, may require the party to furnish the court with stamped, addressed envelopes for service of the order or judgment, and may require that proposed orders and judgments be furnished to all parties before entry by the court of the order or judgment.
(2) When a final judgment is entered against a party in default, the court shall mail a conformed copy of it to the party. The party in whose favor the judgment is entered shall furnish the court with a copy of the judgment, unless it is prepared by the court, and the address of the party to be served. If the address is unknown, the copy need not be furnished.
(3) This subdivision is directory and a failure to comply with it does not affect the order or judgment or its finality or any proceedings arising in the action.
It is uncontroverted that the trial court did not send the order of October 5, 2005, to Ballast. It is uncontroverted that Mourning did in fact send the order of October 5, 2005, setting trial to Ballast on October 15, 2005. It is further uncontroverted that the trial itself did not take place until December 12, 2005, which is 58 days after Ballast received notice of the jury trial docket.
Ballast argued, and the trial court accepted, that rule 1.440(c) and rule 1.080(h)(1)-(3), must be strictly construed as bright-line rules that the court must send out the order setting an action for trial. Ballast further argued the failure of that to occur required the setting aside of *892 the default final judgment for unliquidated damages.
A trial court's ruling on a motion to vacate under Florida Rule of Civil Procedure 1.540 is reviewed under the abuse of discretion standard. Rosso v. Golden Surf Towers Condo. Ass'n, 711 So.2d 1298, 1300 (Fla. 4th DCA 1998). However, in this case there appears to be no factual dispute upon which the trial court based its determination to vacate the default final judgment. The trial court based its decision on a pure question of law, i.e., that rule 1.440(c) and rule 1.080(h)(1)-(3) required as a matter of law that the order setting the trial on the unliquidated damages must be served by the court and not by Mourning's counsel. Therefore, since the court's ruling was as a matter of law, our standard of review is de novo.
In support of its position, Ballast cites Lauxmont Farms, Inc. v. Flavin, 514 So.2d 1133 (Fla. 5th DCA 1987), Pierce v. Anglin, 721 So.2d 781 (Fla. 1st DCA 1998), and Viets v. American Recruiters Enterprises, 922 So.2d 1090 (Fla. 4th DCA 2006). We find these cases distinguishable.
The underlying principle inherent in rule 1.440(c) is one of due process. Rule 1.440(c) mandates the parties to litigation are entitled to an order setting a case for trial and the order setting the case for trial shall give at least thirty days notice from the entry of that order to the trial date itself. See Bennett v. Cont'l Chems., Inc., 492 So.2d 724 (Fla. 1st DCA 1986). This requirement of due process as it relates to claims for unliquidated damages is reiterated in Lauxmont Farms, Pierce, and Viets. Ballast relies heavily upon Lauxmont Farms, and asserts it is squarely on point. The facts outlined in Lauxmont Farms are somewhat limited and so it is questionable that it is "squarely on point" with the instant case.
Lauxmont Farms involved an appeal from a judgment which awarded unliquidated damages without a trial. Although a default judgment can be entered to establish liability, a trial is necessary to establish unliquidated damages. See Bowman v. Kingsland Dev., Inc., 432 So.2d 660 (Fla. 5th DCA 1983). The Lauxmont Farms court held that the award of unliquidated compensatory damages by summary judgment is error. The court noted:
After the motion for summary judgment and compensatory damages were [sic] granted, the attorney for appellee sent a notice of nonjury trial to the appellant. The notice was defective because the order was sent by the opposing attorney rather than the court and did not give the requisite thirty-days notice of trial. Fla. R. Civ. P. 1.440(c). Lauxmont Farms did not attend the nonjury trial in which the trial court awarded $1,600,000 in punitive damages and $6,400 in attorney's fees and costs.
Lauxmont Farms, 514 So.2d at 1134. The court went on to state:
We have stated before that a party has a due process entitlement to notice and an opportunity to be heard on unliquidated damages pursuant to Florida Rule of Civil Procedure 1.440. Bowman v. Kingsland Development, Inc., 432 So.2d at 663. Lauxmont Farms' fundamental due process rights were violated by the defective notice of nonjury trial for both compensatory and punitive damages as well as attorneys fees and costs.
Lauxmont Farms, 514 So.2d at 1134.
Ballast asserts that Lauxmont Farms establishes a bright-line rule that not only must an order setting the case for trial set the trial at least thirty days from the date of the order, but that the order must be sent by the trial court. We disagree. The language in Lauxmont Farms referring to *893 the notice as being defective because it was sent by opposing counsel rather than the court is unnecessary for the disposition in Lauxmont Farms and is therefore dicta. As noted earlier, the judgment for unliquidated damages was determined by summary judgment rather than a jury trial and Lauxmont Farms did not get an order setting its case for trial with the requisite thirty days notice.
In Pierce, the court reversed a final judgment that was entered only on a motion for default and affidavit without a trial on unliquidated damages having been set or held. Unlike the instant case, no order setting trial under rule 1.440(c) was ever entered or served upon defendant Pierce.
In Viets, our court vacated a default judgment on the defendant's counterclaim because there was no trial held on the unliquidated damages. There was not even a notice of trial in Viets, only an order on a motion for default judgment and affidavit without any hearing. The plaintiff/counter-defendant in Viets was given no opportunity to defend. This court in Viets held these defects violated due process because there was no notice or order setting the hearing on the motion for default judgment and damages were awarded without a hearing.
Ballast argues that our court in Viets cites Lauxmont Farms with approval. There is no specific discussion of the requirements of rule 1.440(c) in Viets, and we cited to Lauxmont Farms as support for vacating a default judgment where there was a lack of due process. Mailing of a notice or an order was not involved in Viets. In the instant case, there was an order, it was served on Ballast, the order gave Ballast notice of the calendar call, the duration of the trial docket, and the trial itself did not take place until December 12, 2005. Ballast received due process and chose not to show up and defend.
Although Ballast has cited to this court numerous cases involving the question of the necessity of notice of setting a trial date for due process purposes, in each instance either an order was not sent, a jury trial was not held, or if a trial took place, the trial occurred before the thirty-day requirement. To read into rule 1.440(c) in conjunction with rule 1.080 that the order setting a case for jury trial to be effective must be placed in envelopes addressed to a defendant by the court itself is unreasonable and adds nothing to the requirement to afford Ballast due process. We can discern no due process implication if Ballast receives the order setting the trial docket in a timely fashion and that order comes in a properly addressed envelope sent through the U.S. mail by Mourning's counsel. We fail to see the logic in permitting Ballast to ignore the order and thereafter engage in "gotcha" tactics to set aside the final judgment.
The dissent advocates a bright-line rule that the order setting the instant case for trial must be sent to Ballast by the trial court in order to assure due process. However, the dissent fails to explain or delineate how Ballast was deprived of due process by receiving the order setting the case for jury trial in an envelope mailed by Mourning. It is the identical order Ballast would have received had the order been posted by the trial court. If Ballast were asserting any of the following: (1) that it did not receive the order, or (2) that without receiving an order in an envelope mailed by the court, it created doubt as to the order's authenticity, or (3) that the trial commenced less than 30 days from the receipt of the order, then there would be due process implications. None of that is alleged in the instant case.
The dissent lists a litany of cases to support her position concerning bright-line rules. None of those cases except Bennett *894 v. Continental Chemicals, Inc., 492 So.2d 724 (Fla. 1st DCA 1986), are germane to the facts in this case. Even Bennett is distinguishable from the instant case because in Bennett, the trial court never entered an order setting the case for trial. The court in Bennett disapproved of what apparently was a local procedure that parties scheduling non-jury matters simply have the trial date and time reserved on the judge's calendar. Additionally in Bennett, the case could not be set for trial because it was not at issue.
The dissent also relies heavily on this court's opinion in Stowe v. Universal Property & Casualty Insurance Co., 937 So.2d 156 (Fla. 4th DCA 2006), in advocating a bright-line rule. However, this court in Nicholson-Kenny Capital Management Inc. v. Steinberg, 932 So.2d 321 (Fla. 4th DCA 2006), in fact made an exception to the bright-line rule in the application of Florida Rule of Civil Procedure 1.820(h). In Nicholson-Kenny, this court would not permit Steinberg to engage in "gotcha" tactics. The dissent attempts to distinguish this court's departure from an application of a bright-line rule in Nicholson Kenny by concluding that the defendant in Nicholson-Kenny "waived" the bright-line rule by participating in the pretrial conference even though the plaintiff failed to file a motion for a trial de novo. In the instant case, Ballast received the order setting the case for trial, and without any explanation or justification failed to appear to defend the jury trial for unliquidated damages. This failure to appear constitutes a waiver[3] and such conduct should not be countenanced.
The dissent's reference to the Florida Supreme Court's recent decision in Campbell v. Goldman, 959 So.2d 223 (Fla.2007), as additional support for the application of a bright-line rule is misplaced. The issue in Campbell is whether a proposal for settlement could be enforced without citation to section 768.79, Florida Statutes. The majority in Campbell held that the attorney fee-shifting provision of a proposal for settlement was created by statute and because it is penal and in derogation of the common law, rule 1.442 and section 768.79 must be strictly construed. Id. Neither of the rules implicated in the instant case is penal in nature nor in derogation of the common law.
To elevate form over substance under the facts of this case does nothing to advance the due process of law. We therefore reverse and remand for further proceedings consistent with this opinion.
Reversed and Remanded.
POLEN, J., concurs.
GUNTHER, J., dissents with opinion.
GUNTHER J., dissenting.
I respectfully dissent.
Based on the facts in this case, I would affirm the trial court's order vacating the judgment for unliquidated damages. The trial court entered a default on liability *895 against Ballast Nedam Construction, Inc. The trial court then entered an order setting a trial on unliquidated damages. Contrary to the Florida Rules of Civil Procedure, the trial court did not serve the order setting trial on Ballast, which was unrepresented by counsel at this point in time. Thereafter, the Mournings sought a special trial date, and, on October 5, 2005, the trial court entered a new order resetting trial to the November 7, 2005 docket. The trial court again failed to serve on Ballast the order setting trial for November 7, 2005. However, on October 15, 2005, only twenty-three days prior to the beginning of the trial docket on which the case was set, the Mournings' counsel served on Ballast a copy of the trial court order setting trial. As such, even if it were proper for counsel, and not the trial court, to serve an order setting trial on Ballast, the service would have provided less than the mandatory thirty-day notice required by Rule 1.440(c). Plus, the order was sent ten days after entry by the trial court, contrary to the requirement of Florida Rule of Civil Procedure 1.080(h)(1) that the order be served at the time it is entered by the trial court. At the start of the November 7, 2005 trial docket the case was rescheduled for December 12, 2005, for a jury trial on unliquidated damages. Ballast was not notified of the December 12 trial date. Ballast did not appear on December 12 for trial, and following the jury verdict a final judgment was entered against Ballast. Thereafter, Ballast, through counsel, filed a motion to vacate the damages judgment based on the trial court's failure to comply with rules of civil procedure. At a hearing on that motion, the trial court recognized that it had not complied with Florida Rule of Civil Procedure 1.440(c) and granted Ballast's motion to vacate.
The language of the applicable Florida Rules of Civil Procedure is clear. Florida Rule of Civil Procedure 1.440(c) provides:
Setting for Trial. If the court finds the action ready to be set for trial, it shall enter an order fixing a date for trial. Trial shall be set not less than 30 days from the service of the notice for trial. By giving the same notice the court may set an action for trial. In actions in which the damages are not liquidated, the order setting an action for trial shall be served on parties who are in default in accordance with rule 1.080(a).
Florida Rule of Civil Procedure 1.080(a) provides:
Service; When Required. Unless the court otherwise orders, every pleading subsequent to the initial pleading and every other paper filed in the action, except applications for witness subpoena, shall be served on each party. No service need be made on parties against whom a default has been entered, except that pleadings asserting new or additional claims against them shall be served in the manner provided for service of summons.
Finally, Rule 1.080(h)(1) specifically addresses service of orders setting trial on defaulted parties:
A copy of all orders or judgments shall be transmitted by the court or under its direction to all parties at the time of entry of the order or judgment. No service need be made on parties against whom a default has been entered except orders setting an action for trial as prescribed in rule 1.440(c) and final judgments that shall be prepared and served as provided in subdivision (h)(2). The court may require that orders or judgments be prepared by a party, may require the party to furnish the court with stamped, addressed envelopes for service of the order or judgment, and may *896 require that proposed orders and judgments be furnished to all parties before entry by the court of the order or judgment.
A combined reading of these rules reveals that it is the trial court's, and not opposing counsel's, responsibility to serve orders setting trial on parties, including those in default. Under the plain language of Rule 1.440, the trial court was required to enter an order fixing a date for trial. This the trial court did. Under the plain language of Rule 1.080(h), the trial court, and not Mourning, was required to transmit the order setting trial to Ballast at the time the order was entered. This the trial court did not do. Yet, the rules make it clear that the trial court must serve, at the time of entry, the order setting trial on the parties and that the trial shall not be set less than thirty days from service of the notice of trial.
The various cases considering a trial court's failure to comply with this mandatory service requirement lead me to conclude that failure to comply is a due process violation warranting reversal of a final judgment. In Lauxmont Farms, Inc. v. Flavin, 514 So.2d 1133 (Fla. 5th DCA 1987), after a motion for summary judgment on unliquidated damages in a default case was erroneously granted, an order setting non-jury trial on punitive damages and attorney's fees was sent by Flavin's counsel. Id. at 1134. Lauxmont Farms did not appear at trial and a punitive damages and attorney's fees judgment was entered against it based on the jury's verdict. Id. The Fifth District reversed and held as follows:
Strict compliance with Florida Rule of Civil Procedure 1.440 is required and failure to do so is reversible error. Ramos v. Menks, 509 So.2d 1123 (Fla. 1st DCA 1986); Bennett v. Continental Chemicals, Inc., 492 So.2d 724 (Fla. 1st DCA 1986); see also Broussard v. Broussard, 506 So.2d 463 (Fla. 2d DCA 1987). We have stated before that a party has a due process entitlement to notice and an opportunity to be heard on unliquidated damages pursuant to Florida Rule of Civil Procedure 1.440. Bowman v. Kingsland Development, Inc., 432 So.2d at 663. Lauxmont Farms' fundamental due process rights were violated by the defective notice of nonjury trial for both compensatory and punitive damages as well as attorneys fees and costs. Accordingly, the judgments for damages, attorney's fees and costs are reversed and remanded for new trial after proper notice under Florida Rule of Civil Procedure 1.440.
Id. Apart from the erroneous grant of summary judgment regarding unliquidated damages, the court in Lauxmont held that the trial court's failure to comply with the strict requirement of serving an order setting a trial, even one for punitive damages and attorney's fees against a defaulted party, required reversal on due process grounds.
In Bennett v. Continental Chemicals, Inc., 492 So.2d 724 (Fla. 1st DCA 1986), the court likewise held that the trial court's failure to serve an order setting trial on a party that did not ultimately appear for trial required the reversal of a final judgment on due process grounds (and in the interest of promoting uniformity) and concluded that "strict compliance with rule 1.440 is mandatory." Id. at 727. As such, it is clear from cases such as Lauxmont and Bennett that except in cases of waiver,[4] the trial court's failure to *897 transmit the order setting trial to the parties is reversible error because of the risks to due process, without engaging in any type of calculus or entertaining the particular circumstances of a case. See also Brown v. Reynolds, 872 So.2d 290, 297 (Fla. 2d DCA 2004)("The rule [1.440] is designed to safeguard the parties' right to procedural due process. Noncompliance with the rule may violate a party's due process rights. Thus strict compliance with the rule is mandatory.")(internal citations omitted).
Moreover, the current trend to construe Florida Rules of Civil Procedure in a bright-line fashion based on their plain language and unambiguous meaning supports the conclusion that the clear rules governing the serving of orders setting trial should likewise be construed in a bright-line fashion. See Saia Motor Freight Line, Inc. v. Reid, 930 So.2d 598, 600 (Fla.2006)(concluding that a Rule 1.525 motion for costs was untimely despite a reservation of jurisdiction based on the plain meaning of the rule: "When we adopted rule 1.525, effective January 1, 2001, we established a bright-line time requirement for motions for costs and attorney fees which the Rules of Civil Procedure had not previously contained. Judge Altenbernd correctly made this point stating, in Diaz v. Bowen, 832 So.2d 200, 201 (Fla. 2d DCA 2002), that `[r]ule 1.525 was created to establish a bright-line rule to resolve the uncertainty surrounding the timing of these posttrial motions.'"); Wilson v. Salamon, 923 So.2d 363, 368 (Fla.2005)("However, the language of the rule [1.420(e)] is clear-if a review of the face of the record does not reflect any activity in the preceding year, the action shall be dismissed, unless a party shows good cause why the action should remain pending; however, if a review of the face of the record reveals activity by `filings of pleadings, order of court, or otherwise,' an action should not be dismissed. See Metropolitan Dade County v. Hall, 784 So.2d 1087, 1090 (Fla.2001). This construction of the rule establishes a bright-line test that will ordinarily require only a cursory review of the record by a trial court. As Justice Wells noted in Hall, there is either *898 activity on the face of the record or there is not. Id. We find this bright-line rule appealing in that it establishes a rule that is easy to apply and relieves the trial court and litigants of the burden of determining and guessing as to whether an activity is merely passive or active. It is this burden which has created the difficulty with which litigants and trial courts have struggled to determine whether a particular filing or action will advance the cause to resolution."); Lamb v. Matetzschk, 906 So.2d 1037 (Fla.2005)(applying bright-line rule to particularity and specificity requirements of Rule 1.442 governing proposals for settlement).
My conclusion that the Florida Supreme Court's bright-line trend should be applied to the construction of the rules regarding mandatory trial court service of orders setting trial is further supported by this Court's repeated strict application of rules of civil procedure in a bright-line fashion, on no less than seventeen occasions since December 2005.[5]
The first case recognizing the bright-line trend for construing rules of civil procedure was Lynch v. United Distributors, Inc., 915 So.2d 274 (Fla. 4th DCA 2005). In Lynch, this court reversed an order dismissing a case for lack of prosecution under Rule 1.420(e), finding that there was sufficient activity on the face of the record during the relevant time period (Lynch's notice of compliance with discovery), and cited Wilson. Id. at 274. This Court did likewise in the second bright-line case, Frisbie v. Gardiner, 917 So.2d 403 (Fla. 4th DCA 2006), involving a motion to withdraw as counsel and an order granting the motion, again citing Wilson. Id. at 404. This Court followed suit yet again in the third bright-line case, Commercial Union Insurance Co. v. Marine Sales & Services, Inc., 923 So.2d 535 (Fla. 4th DCA 2006), involving a civil cover sheet, again citing Wilson. Id. at 535.
The fourth bright-line case, Graham v. Peter K. Yeskel 1996 Irrevocable Trust, 928 So.2d 371 (Fla. 4th DCA 2006), was the first to deal with the bright-line construction of Rule 1.442. In Graham, this Court affirmed an order denying attorney's fees based on a proposal for settlement, finding that the proposal did not apportion the offer between the co-defendants as required by Rule 1.442(c)(3). Id. at 371. This Court concluded that the failure to apportion was fatal based on the *899 Florida Supreme Court's bright-line interpretation of Rule 1.442 and cited Lamb. Id. at 372. On rehearing, this Court further opined:
To us a bright line rule means that it applies in all proposal for settlement cases, without exception. Rule 1.442 applies to "all proposals for settlement authorized by Florida law . . ." Fla. R. Civ. P. 1.442(a). In Lamb and rule 1.442(a), we believe that the supreme court, like Dr. Seuss's Horton the elephant, meant what it said and said what it meant  rule 1.442(c) applies in all cases where proposals for settlement are authorized by Florida law, without exception for claims against litigants relating to property they own as tenants by the entirety.
Id. at 373.
The fifth bright-line case, Hunnewell v. Palm Beach County, 925 So.2d 468 (Fla. 4th DCA 2006), shifted back to yet another consideration of Rule 1.420(e). In Hunnewell, this Court again reversed an order dismissing a case for lack of prosecution, finding sufficient activity on the face of the record during the relevant time period (an order denying the County's motion to dismiss), and noted that following Wilson, the court no longer needed to determine whether the record activity was active or passive. Id. at 470. This Court further noted that Wilson evidenced that "our supreme court sensed the need for a bright-line test to balance the competing need of litigants to have claims heard on the merits with the court's need to dispose of cases that are not being prosecuted." Id.
In the sixth bright-line case, Richards v. Sheriff of Palm Beach County, 925 So.2d 1166 (Fla. 4th DCA 2006), this Court continued its bright-line application of Rule 1.420(e). In Richards, this Court yet again reversed an order dismissing a case for lack of prosecution, finding sufficient activity on the face of the record during the relevant time period (an order granting Richards's attorney's motion to withdraw), and cited Wilson. Id. at 1167-1168. The seventh bright-line case, Carnes v. Fender, 936 So.2d 11 (Fla. 4th DCA 2006), again considered rule 1.442. In Carnes, this Court denied a motion for appellate attorney's fees based on proposals for settlement, finding that they lacked the specificity required by Rule 1.442(c)(2)(D), and cited to a predecessor case to Lamb, Swartsel v. Publix Super Markets, Inc., 882 So.2d 449 (Fla. 4th DCA 2004). Id. at 15.
The eighth bright-line case, Walker v. McDonough, 929 So.2d 1127 (Fla. 4th DCA 2006), again dealt with Rule 1.420(e). In Walker, this Court reversed an order dismissing a case for lack of prosecution, finding sufficient activity on the face of the record during the relevant time period (two notices of change of address and a notice of absence from the jurisdiction), and cited Wilson. Id. at 1128. The ninth bright-line case, Rivera v. Publix Super Markets, Inc., 929 So.2d 1184 (Fla. 4th DCA 2006), again involved Rule 1.442. This Court reversed an order awarding attorney's fees based on an offer of judgment, finding that the offer failed to state its non-monetary terms with the particularity required by Rule 1.442(c)(2)(C)-(D), and cited Swartsel. Id. at 1184.
The tenth bright-line case is Stowe v. Universal Property & Casualty Insurance Co., 937 So.2d 156 (Fla. 4th DCA 2006), which is the first case to apply the bright-line trend to a rule outside the triad discussed by the Supreme Court in Saia, Lamb, and Wilson, Rule 1.820(h). In Stowe, an insurance contract dispute was referred to non-binding arbitration under Florida Statutes section 44.103. Id. at 157. Following the arbitration, but before a decision was issued, Stowe filed a notice for trial. Id. at 157-158. The arbitrator *900 then rendered a decision, but Stowe did not file another notice for trial requesting trial de novo within the twenty-day window following the decision, so Universal moved for entry of judgment based on the arbitrator's decision in accordance with Rule 1.820(h). Id. at 158. This Court affirmed the resulting judgment, finding that a motion for trial does not comply with Rule 1.820(h) if it is filed after an arbitration hearing but before the rendition of the arbitrator's decision. Id. at 157. This conclusion was based on the plain language of Rule 1.820(h) in keeping with the bright-line trend for interpreting rules of civil procedure, as explained by this Court:
When it comes to interpreting rules of civil procedure, often the job of an intermediate appellate court is to read the tea leaves of Florida supreme court decisions. The recent trend in these decisions is to construe rules of civil procedure according to their plain meaning. Some high court opinions strictly construe provisions to create rules that are clear-cut and easy to apply. Thus, Lamb v. Matetzschk, 906 So.2d 1037 (Fla.2005), adopted a bright line rule concerning the form of a rule 1.442 proposal for settlement. Recently, in Saia Motor Freight Line, Inc. v. Reid, 930 So.2d 598 (Fla.2006), the supreme court described rule 1.525 as establishing "a bright-line time requirement for motions for costs and attorney fees." Wilson v. Salamon, 923 So.2d 363 (Fla.2005) interpreted rule 1.420(e) by its "plain meaning" to "further the purpose of decreasing litigation over the purpose of the rule and fostering the smooth administration of the trial court's docket."
Id. at 158. Additionally, in following the bright-line trend, this Court noted the slippery-slope-like dangers of exceptions to bright-line rules, such as that suggested by Stowe's circumstances:
The position that Stowe urges us to adopt does violence to the concept of a bright-line rule. If a motion for trial after an arbitration hearing but before a decision complies with the rule, what about a motion after the arbitration is set, but before the hearing, or a motion filed before an order setting arbitration, but after arbitration has been put into play by the court or the parties?
Id. at 158-159.
The eleventh bright-line rule case is Rubio v. Cuba, 933 So.2d 1292 (Fla. 4th DCA 2006), once again confronting Rule 1.420(e). In Rubio, this Court reversed an order dismissing a case for lack of prosecution, finding sufficient activity on the face of the record during the relevant time period (Rubio's notice of deposition), and cited Wilson. Id. at 1292-1293. This Court did likewise in the twelfth bright-line case, Johnson v. Maroone Ford LLC, 944 So.2d 1059 (Fla. 4th DCA 2006), involving a request for production, again citing Wilson. Id. at 1061. The thirteenth bright-line case, Joseph v. Chanin, 938 So.2d 619 (Fla. 4th DCA 2006), was the first to address the bright-line construction of Rule 1.525. In Joseph, this Court accepted Chanin's concession of error admitting that her post-judgment motion for costs was untimely served under Rule 1.525 and cited Saia. Id. at 619-620.
The fourteenth bright-line case, Papouras v. BellSouth Telecommunications, Inc., 940 So.2d 479 (Fla. 4th DCA 2006), once again returned to consideration of Rule 1.442. In Papouras, this Court affirmed an order denying attorney's fees based on a proposal for settlement, because the proposal lacked the specificity required by Rule 1.442. Id. at 479. The specificity that was lacking was the details (whether a summary or copy) of the full release to be executed based on the terms of the proposal. *901 Id. at 480. In reaching this conclusion, this Court recognized that the Florida Supreme Court had adopted a bright-line interpretation of Rule 1.442 and cited to a predecessor case to Lamb, State Farm Mutual Automobile Insurance Co. v. Nichols, 932 So.2d 1067 (Fla.2006).
The fifteenth bright-line case, State Farm Mutual Automobile Insurance Co. v. Stylianoudakis, 946 So.2d 647 (Fla. 4th DCA 2007), involved yet another application of Rule 1.525. In Stylianoudakis, this Court reversed a costs judgment filed beyond the thirty-day window provided by Rule 1.525 due to a reservation of jurisdiction based on Saia. Id. at 649. The sixteenth bright-line case, ZC Insurance Co. v. Brooks, 32 Fla. L Weekly D829, 2007 WL 911843 (Fla. 4th DCA Mar.28, 2007), also addressed Rule 1.525. In Brooks, this Court again reversed a fees and costs judgment for failure to timely serve a motion under Rule 1.525 based on a reservation of jurisdiction, relying on Saia. Id.
The seventeenth (and final at the time of this writing) bright-line case, Metcalfe v. Lee, 952 So.2d 624 (Fla. 4th DCA 2007), is the second case to apply the bright-line trend to a rule outside the triad discussed by the Supreme Court in Saia, Lamb, and Wilson, Rule 1.260(a). In Metcalfe, a medical malpractice suit was dismissed for failure to comply with Rule 1.260 and substitute a personal representative as the plaintiff in the lawsuit following Metcalfe's death. Id. at 626. On June 30, 2005, counsel filed a motion for substitution indicating that Metcalfe's estate was being probated, that the estate was seeking the appointment of a personal representative, and that counsel was requesting that the personal representative be substituted into the malpractice suit as the plaintiff. Id. On August 10, 2005, a defendant filed a motion to dismiss for failure to substitute parties, asserting that a suggestion of death had been filed on May 9, 2005 so that the ninety-day period for substitution under Rule 1.260(a)(1) had expired on August 8 without the occurrence of substitution. Id. at 626-627. Thereafter, the trial court denied the motion for substitution and granted the motion to dismiss for failure to substitute based on the asserted untimeliness. Id. at 627. Recognizing that rules of civil procedure are to be construed based on their plain and ordinary meaning, and citing the triad of Florida Supreme Court bright-line cases, this Court reversed the dismissal, holding that dismissal was inappropriate "in light of the rule's plain language as to when a trial court can dismiss an actiononly when there is a failure to make a motion for substitution" because a motion for substitution had been timely filed within the ninety-day window of Rule 1.260(a) (regardless of whether substitution had yet occurred) by a party with standing under the plain language of the rule. Id. at 629-630.
Against this backdrop of bright-line cases regarding the interpretation of rules of civil procedure and clear cases regarding the per se offense to due process resulting from noncompliance with Rules 1.440(c) and 1.080(h)(1), it seems to me that these rules must be interpreted based on their plain meaning. Thus, the rules require that the trial court in all cases, without particularized exceptions, must transmit to the parties, at the time of entry, the order setting a case for trial and that the trial shall be set not less than thirty days from the service of the order. To conclude otherwise would defeat the due process protections inherent in the rules and would stray from the Florida Supreme Court's bright-line trend for applying rules of civil procedure.
Perhaps a bright-line construction of Rules 1.440(c) and 1.080(h)(1) may appear *902 to elevate form over substance, but I believe it more importantly promotes the efficient administration of justice through uniformity and certainty in the practice of law and in the application of rules designed to achieve these very ends. See Fla. R. Civ. P. 1.010 ("These rules shall be construed to secure the just, speedy, and inexpensive determination of every action."). It allows counsel to know what type of notice to expect without speculation, it eliminates subjectivity in the application and interpretation of the rules, and it promotes due process in the sense that all parties, regardless of their circumstances, will receive the same notice, at the same time, from the same impartial trial court.
If there are legitimate concerns about whether the mandatory requirement of service by the trial court promotes the interests of due process or rather elevates form over substance, those concerns are best resolved by the Florida Supreme Court which approved the present rules. See BDO Seidman, LLP v. British Car Auctions, Inc., 802 So.2d 366, 370 (Fla. 4th DCA 2001)("[Article V, Section 2(a) of the Florida Constitution] provides that the `supreme court shall adopt rules for the practice and procedure in all courts.' That provision endows the supreme court `with the exclusive authority to adopt rules for practice and procedure in the courts of this State.'")(Gross, J., concurring specially). The present rules, as approved by the court, simply do not allow for due process distinctions based on the circumstances of individual cases.
For these reasons expressed, I conclude that based on the clear facts of this case and the plain language of the applicable rules of civil procedure, the trial court did not err in granting Ballast's motion to vacate the damages judgment. I would affirm.
NOTES
[1] After entry of the default judgment, Mourning filed a unilateral pretrial statement on August 19, 2005, a copy of which was sent certified mail to Ballast. In anticipation of the trial in September 2005, Mourning also set the deposition of two treating physicians and sent notices to Ballast, one on September 2, 2005 and the other on September 14, 2005. Ballast failed to respond or to attend these depositions.
[2] This order provides for mandatory attendance at the calendar call scheduled for October 21, 2005. Because there were numerous cases set on the calendar, one of the purposes of the calendar call was to set the actual trial date for any individual case. By attending the calendar call, parties could be apprised when their case would be reached during the eight-week period. Ballast failed to attend the calendar call.
[3] The definition of waiver in BLACK'S LAW DICTIONARY is as follows:

The intentional or voluntary relinquishment of a known right, or such conduct as warrants an inference of the relinquishment of such right, or when one dispenses with the performance of something he is entitled to exact or when one in possession of any right, whether conferred by law or by contract, with full knowledge of the material facts, does or forbears to do something the doing of which or the failure of forbearance to do which is inconsistent with the right, or his intention to rely upon it. The renunciation, repudiation, abandonment, or surrender of some claim, right, privilege, or of the opportunity to take advantage of some defect, irregularity, or wrong. An express or implied relinquishment of a legal right. . . .
BLACK'S LAW DICTIONARY 1580 (6th ed.1995).
[4] An example of waiver can be found in the lone case which the majority suggests constitutes an instance in which this Court failed to adhere to the bright-line trend for construing rules of civil procedure, Nicholson-Kenny Capital Management, Inc. v. Steinberg, 932 So.2d 321 (Fla. 4th DCA 2006). In Nicholson-Kenny, a party filed a "Notice of Conference of Parties & Attorneys" to address pretrial issues four days after a non-binding arbitration decision. Id. at 323. The opposing party filed a motion for final judgment alleging that the party had failed to comply with Florida Rule of Civil Procedure 1.820(h) by not expressly requesting a trial de novo. Id. This Court affirmed the ensuing entry of final judgment, writing:

Even though the notice indicating a continued demand to proceed to trial was not specifically styled a "motion for trial de novo," we would conclude that Steinberg, through its conduct, is precluded from raising the issue of non-compliance with rule 1.820. It did not object when its attorneys were noticed to attend the pretrial conference; it worked with Nicholson's attorney to develop the pretrial statement; and it did not object to setting the trial at the docket call. All of these events occurred within the time in which Nicholson could have filed a "motion for trial de novo" had it known that Steinberg was insisting that it file a document so styled. Steinberg continued preparing for a trial and never revealed its argument that the notice of setting the pretrial conference in accordance with the order setting trial was insufficient to put it on notice that Nicholson intended to proceed with a trial.
Id. at 324-325. As such, I conclude that Nicholson-Kenny is not so much a deviation from the bright-line trend, as it is an instance in which compliance with a rule was waived by a party's "gotcha" conduct. Thus, it is clearly distinguishable from the present case involving a default in which the aggrieved party took no action inconsistent with enforcement of the rules in question nor participated in any of the proceedings to the point of misleading the plaintiff.
[5] In fact, there are only two instances during this time period in which it could be legitimately contended that this Court failed to follow the bright-line trend. One of these cases was Nicholson-Kenny, as discussed in Footnote 1, a case involving a waiver of rule compliance based on "gotcha" conduct that is not a true deviation from the bright-line trend. The other case was Goldman v. Campbell, 920 So.2d 1264 (Fla. 4th DCA 2006), which although recognizing the bright-line trend, did not apply it to a case involving some unique circumstances surrounding Rule 1.442 and the law related to proposals for settlement. In Goldman, the plaintiff failed to cite Florida Statutes section 768.79 in his proposal for settlement as required by Rule 1.442(c)(1) and the statute, and this Court concluded that such a technical violation of the rule did not warrant invalidating the proposal where only one statute presently governed proposals for settlement. Id. at 1266. However, this case, and the technical violation exception to the bright-line rule which it arguably created, was recently reversed by the Florida Supreme Court in Campbell v. Goldman, 959 So.2d 223 (Fla.2007). The Supreme Court rejected a distinction between the substantive and procedural portions of Rule 1.442, and held that because the plain language of the rule and statute requiring citing the statute in a proposal for settlement must be strictly construed (in keeping with the bright-line trend established by cases like Willis Shaw and Lamb), the proposal for settlement at issue was invalid. This development further supports my position that the bright-line trend is thriving and should be equally applied to the construction of the rules at issue in this case.