SILBERMAN, Chief Judge.
In this pending dependency case, J.C. and C.C., the paternal grandparents, seek certiorari review of the trial court’s Order on Keeping Children Safe Act that prohibits J.C., the grandfather, from contact with his grandson, S.C., and continues S.C. in the care, custody, and control of C.C., the grandmother. Because the grandparents have shown irreparable harm and a departure from the essential requirements of the law, we grant the petition.
S.C., born March 3, 2009, had been living with the grandparents since he was five months old because the parents were abusing prescription drugs. S.C. was born dependent on methadone, and on March 1, 2010, the parents executed powers of attorney which gave the grandparents custody of S.C. The father subsequently died of a drug overdose. The grandparents filed a private petition for termination of parental rights as to the mother. Pursuant to a mediation agreement, the mother consented to an adjudication of dependency based upon her substance abuse and agreed to complete services in a case plan. Later, the grandparents asserted that the mother was not actively working on her case plan, and they filed a private petition for dependency.
During the course of the proceedings, the grandfather voluntarily disclosed to the State’s child protective investigator that he had a conviction for a misdemeanor molestation of a child in New York in 1988, when he was still abusing drugs and alcohol. Following a status hearing, the trial court ordered that the grandfather reside outside the home and scheduled a hearing pursuant to the Keeping Children Safe Act.
At the hearing on the Keeping Children Safe Act, the grandparents presented the testimony of Brian Weist, who previously worked as a child protective investigator and who performed the investigation concerning S.C. Weist testified that the child’s parents were abusing prescription drugs and that S.C. was staying with the paternal grandparents. Weist’s report, which was admitted into evidence, reflected that the grandfather admitted that he was convicted of misdemeanor molestation in New York over twenty years ago, when he was still abusing drugs and alcohol. He had touched his ten-year-old daughter, and his wife (the grandmother) contacted law enforcement. The grandfather told Weist that he had counseling and went to rehab and stopped the substance misuse. Weist found the grandfather to be very honest in admitting this and that the grandfather regretted the incident. A criminal history search verified a charge of felony sex abuse in New York in 1988.
Weist recommended that S.C. stay with the grandparents and observed S.C. to be well bonded with the grandfather. Weist determined that the grandfather had no substance abuse issue based on a clean drug screen and Weist’s observation of the grandfather. He also commented that the current situation was different from the prior incident because S.C. was a boy and the earlier situation involved a girl. How *886 ever, Weist did not review any of the grandfather’s treatment records.
Tabitha Lambert, the guardian ad litem (GAL), testified that she visited S.C. with the grandparents on March 3, 2011, that S.C. was very bonded with the grandfather, and that S.C. seemed very happy. She was not aware of the earlier charge against the grandfather at the time of the visit; she became aware of the charge on April 6, 2011. When asked whether, knowing about the past criminal charge, she had any position as to whether it would be safe for the grandfather to be with S.C., the GAL stated that she did not have any concerns. In her opinion, S.C. would be safe living with the grandfather as well as the grandmother, and there were no indicators of sexual abuse of S.C.
The grandfather testified that he was sixty-three years old and currently was living in a motel. He voluntarily left the home two and a half months earlier. S.C. had lived with him and his wife since S.C. was five months old, and S.C. was now two years old. The grandfather was convicted of molestation of his ten-year-old daughter in New York in 1988; the original charge was a felony but he was convicted of a misdemeanor. His wife reported him, and she remained his wife. He served three years’ probation and completed all the terms of his probation, including counseling. He tried to get records but was told the records no longer existed because they were from 1988.[1] He completed two substance abuse programs, attended Narcotics Anonymous and Alcoholics Anonymous, and has been clean and sober for twenty-four years. He continues to go to AA periodically. There have been no other allegations against him since 1988, and he has no doubt that his wife would report any instance of sexual abuse or substance abuse. The grandfather wishes to move back into the home with his wife and grandchild.
On cross-examination, the grandfather testified that the incident in 1988 occurred when he was heavily intoxicated and high on drugs and that he had a total blackout. His wife and daughter told him that he had his daughter on his lap and touched her through her pajamas. As soon as his wife found out, she took the children, left, and called the police. After he was arrested he went into a rehab alcohol program, completed it, and has not had drugs or alcohol since then. He would have no objection to doing a substance abuse evaluation or a psychosexual evaluation.
The trial court then asked the following questions:
THE COURT: Please let me ask a question or two of the State to make sure I understand Eckerd’s position. As I understand counsel for Eckerd’s representation, Eckerd is — cannot recommend placement of the child [S.C.] in a home where the paternal grandfather, [C.C.], resides and hence would have contact with the child?
MS. BARBELES: Correct.
THE COURT: And that would be the case in light of the evidence already presented regardless of an opinion from a psychosexual examiner or a substance abuse evaluator I presume because the paternal grandfather has no legal right to have custody of the child, and why would anybody take a chance essentially?
MS. BARBELES: Correct.
The grandmother testified that S.C. had been living with her since he was five months old and was currently living with her. She testified that she reported the sexual abuse incident approximately twen *887 ty-three years ago on the same night that it occurred. She testified that her husband had come home drunk and that he was trying to touch their daughter’s bottom or underwear while she was wearing clothes. The grandmother was enraged and left with the children. At that time the grandfather had a drinking and substance abuse problem. He was on probation for three years and out of the home for about a year and in drug rehab. The whole family went to counseling. He has remained clean and sober since that time.
The grandmother has no further concerns about sexual abuse issues with children. A document was admitted into evidence reflecting that Reverend Gale Hoone at L.I.F.E. Ministries in Florida, where the grandmother works, performed counseling for the family and for the grandfather’s alcoholism. The grandmother testified that she had no doubt that she would report the grandfather if he used alcohol or if she thought anything looked suspicious or inappropriate. She has no concerns about the grandfather being around S.C., and she would be comfortable with him moving back in the residence. She observed that he was a loving grandfather and was very appropriate with S.C.
The trial court entered a written order that prohibits the grandfather from any contact with his grandson and orders that S.C. remain in the custody of the grandmother. The order contains no findings of fact or explanation of the trial court’s reasoning, but it keeps in effect the prior order that prohibits the grandfather from living with his wife.
The Department contends that the grandparents lack standing to challenge the order because grandparents are generally participants but not parties. See C.V. v. Dep’t of Children & Family Servs., 19 So.3d 381, 383 (Fla. 2d DCA 2009) (determining that grandparents had no standing to appeal an order that rejected their request to transfer placement to them after an adjudication of dependency but recognizing that a grandparent could have “legal rights sufficient to maintain a petition for writ of certiorari if the trial court departed from the essential requirements of the law as to the grandparents’ rights”). Here, as the Department recognizes, the grandparents filed a private termination of parental rights petition and subsequently filed a private dependency petition. But the Department argues that although the grandparents are “essentially” parties they would need some kind of “additional standing” to challenge this order regarding placement.
Section 39.01(51), Florida Statutes (2010), defines “party” to include “the petitioner.” Because the grandparents are petitioners in the trial court, they are not “essentially” parties, they are parties. Thus, we determine that they have standing to challenge the order. In addition, the effect of the order is to prohibit the grandfather from living with his wife, which affects his legal rights.
On certiorari review of a nonfinal order, the petitioner must demonstrate that the trial court departed from the essential requirements of the law and that the trial court’s order caused irreparable harm that cannot be remedied on post-judgment appeal. See Dep’t of Children & Family Servs. v. J.G., 67 So.3d 251, 253 (Fla. 2d DCA 2010); K.G. v. Fla. Dep’t of Children & Families, 66 So.3d 366, 368 (Fla. 1st DCA 2011). With respect to irreparable harm, the grandparents have shown that the trial court’s order forces them to live apart in two separate households if they desire for the grandmother to retain temporary custody of their grandson. The court appeared to determine that it was in the child’s best interest to reside with his grandmother. The order, which has the effect of prohibiting the *888 grandfather from residing with his wife, results in an injury that cannot be remedied on postjudgment appeal.
With respect to a departure from the essential requirements of the law, “[a] petitioner can demonstrate a departure from the essential requirements of the law by showing ‘that the trial court made an error so serious that it amounts to a miscarriage of justice.’ ” K.G., 66 So.3d at 368 (quoting State v. Smith, 951 So.2d 954, 958 (Fla. 1st DCA 2007)). At issue here is the Keeping Children Safe Act, section 39.0139, Florida Statutes (2010) (the Act). There has been no suggestion that S.C., a two-year-old boy, has ever been sexually abused. Our review of the Act leads us to conclude that it applies only to sexually abused or exploited children. Section 39.0139(2) provides as follows:
(2) Legislative findings and intent.—
(a) The Legislature finds that:
1. For some children who are abused, abandoned, or neglected by a parent or other caregiver, abuse may include sexual abuse.
2. These same children are at risk of suffering from further harm during visitation or other contact.
3. Visitation or other contact with the child may be used to influence the child’s testimony.
(b) It is the intent of the Legislature to protect children and reduce the risk of further harm to children who have been sexually abused or exploited by a parent or other caregiver by placing additional requirements on judicial determinations related to visitation and other contact.
(Emphasis added.)
Section 39.0139(3) provides for a rebuttal presumption of detriment to a child when a parent or caregiver has been found guilty of certain crimes that include the child molestation conviction at issue here. Section 39.0139(4) provides that “[a] person who meets any of the criteria set forth in paragraph (3)(a) may visit or have other contact with a child only after a hearing and an order by the court that allows the visitation or other contact.” After the hearing, “[i]f the court finds the person proves by clear and convincing evidence that the safety, well-being, and physical, mental, and emotional health of the child is not endangered by such visitation or other contact, the presumption in subsection (3) is rebutted and the court may allow visitation or other contact.” § 39.0139(4)(e).
Reading subsection (2) on legislative intent as a whole with the remainder of section 39.0139 supports the conclusion that the Act is intended to apply to children who have been sexually abused or exploited. Based on the legislature’s express statement of intent to protect and reduce the risk of further harm to children who have been sexually abused or exploited, it appears that the Act does not apply to S.C. Thus, the trial court applied the incorrect law, thereby departing from the essential requirements of the law in ordering that the grandfather have no contact ■with his grandson based on the Act.
Even if the Act applies to S.C., who has not been sexually abused or exploited, the trial court departed from the essential requirements of the law in not applying the rebuttable presumption that the Act expressly creates. The grandparents presented substantial evidence that the grandfather’s misdemeanor conviction in 1988 for molestation of his ten-year-old daughter was tied to the grandfather’s alcoholism and substance abuse at that time. They presented evidence that the grandfather had completed treatment and has been clean and sober for well over twenty years. The evidence reflects that the grandmother had reported her husband in 1988 and that she would not hesitate to do so again if she had any indication that he was using alcohol or if she thought any *889 thing looked suspicious. She had no concerns about the grandfather being around S.C. and observed her husband to be very appropriate with S.C. Moreover, the child protective investigator and the GAL both recommended that S.C. continue to live with the grandfather and grandmother. S.C. was found to be well bonded with the grandfather and very happy.
It is clear from the trial court’s comments at the hearing that it was not treating the presumption of harm as rebuttable. The grandfather testified that he would be willing to undergo a substance abuse evaluation or a psychosexual evaluation. At the end of the hearing, the trial court stated as follows:
I don’t see what would be accomplished in a psychosexual evaluation for the paternal grandfather at this time or a substance abuse evaluation because, assuming for the sake of argument, they are both totally favorable to the paternal grandfather. In light of the evidence that I have already heard, I cannot justify returning the paternal grandfather to contact with the child [S.C.].
The trial court provided no factual findings in its written order as to the basis for ordering no contact.
Under these circumstances, although the grandparents were permitted to put on evidence at the hearing, which was essentially uncontradicted, the trial court made it clear that it believed that no amount of evidence could rebut the presumption of harm to the child. This is an error so serious that it amounts to a manifest injustice. Thus, even if the Act applies to S.C., the trial court departed from the essential requirements of the law in not applying section 39.0139(3) which provides for a re-buttable presumption. Therefore, we grant the grandparents’ petition for writ of certiorari and quash the trial court’s Order on Keeping Children Safe Act.[2]
Petition granted and order quashed.
LaROSE and CRENSHAW, JJ„ Concur.

. At the end of the hearing, one of the attorneys noted that she tried to get records from New York relating to the case and was also told that they did not exist.

. We recognize that under another provision of chapter 39, section 39.0138, the trial court may consider the criminal history of a person seeking placement of a child. Section 39.0138(7)(b) provides that a person with such a criminal history may present evidence of rehabilitation to show that the person would not pose a danger to the child if placement were allowed and outlining factors that would be relevant to establish rehabilitation.