VILLANTI, Chief Judge.
K.K. (the Mother) petitions for a writ of certiorari seeking to quash the portion of the dependency court’s order that required her three teenage sons, R.T., S.T., and K.T., to undergo therapeutic assessments in connection with the denial of the Mother’s motion to amend a safety plan which prohibits the Mother’s husband, S.K., from having any contact with his stepsons. We grant the petition and quash that portion of the trial court’s order.
This case started in December 2010 when the Department of Children and Family Services filed a dependency petition based primarily on allegations that *13 S.K. had previously sexually abused the nine-year-old daughter of one of his former girlfriends. When the allegations surfaced, S.K. and the Mother were married and living together with the Mother’s five children from her prior marriage, and the Mother was pregnant with S.K.’s child. The trial court adjudicated the Mother’s five children dependent as to her.[1] Because S.K. was the children’s stepfather, the court could not adjudicate those children dependent as to him. Cf. J.P. v. Dep’t of Children & Family Servs., 12 So.3d 253 (Fla. 2d DCA 2009) (noting that chapter 39 defines a “party” to be the parent or parents of the child, the petitioner, the Department, and the guardian ad litem). Instead, the court entered a no contact order as between S.K. and his stepchildren, presumably pursuant to the Keeping Children Safe Act, § 39.0139, Fla. Stat. (2010). Shortly thereafter, the parties’ biological daughter, R.K., was born, and the trial court adjudicated her dependent as to both the Mother and S.K.
The court subsequently approved case plans for both the Mother and S.K. with a goal of reunification. Because of the allegations against S.K. relating to his former girlfriend’s daughter, his case plan required that he undergo a sexual offender assessment and complete any recommended treatment.
Over the next three years, the Mother completed all of her case plan tasks, and she was reunified with all of her children. Once that happened, the Mother, her three oldest sons, and her children with S.K.— R.K. and B.K. — began living together again. However, because S.K. had not completed his case plan as to R.K. and because the no-contact order was still in place as to his stepsons, S.K. was forced to move out of the family home and live separately. In the two years since the Mother has been reunified with her children, S.K. has been supporting the Mother and all of the children, including his stepsons, while he continues to work on his case plan. Since October 2013, S.K. has had unlimited supervised visitation with his daughter, R.K., pursuant to the dependency court’s order. Moreover, S.K. has always had unlimited unsupervised visitation with his infant son, B.K., because the Department never filed any petition as to B.K. However, the no-contact order between S.K. and his stepsons has remained in place since the inception of the case.
In July 2014, S.K. filed a motion for reunification with R.K. based on his completion of all of his case plan tasks. He also sought to have the no-contact order lifted as to his stepsons so that he could move back into the family home. The Department and the Guardian ad Litem opposed this motion, contending that the sexual offender treatment that S.K. had completed was insufficient to address the issues that had brought the children into care in the first place.
At a hearing on August 15, 2014, the trial court struck S.K’s motion as it related to the no-contact order with his stepsons, ruling that S.K. had no standing to challenge this order because he was not a “party” to the dependency of those children since he did not qualify as their “parent” under the dependency statutes. Given that the effect of this order was to preclude S.K. from living in the same house with his wife and biological children, the court’s finding that he had no standing to seek the modification of this order is *14 puzzling. Nevertheless, to address the issue within the confines of the court’s ruling, the Mother subsequently filed a motion seeking to amend the safety plan that contained the no-contact order between S.K. and his stepsons so as to eliminate that portion of the order.
The trial court held three subsequent hearings at which it addressed the allegations. At the conclusion of those hearings, the trial court denied the Mother’s motion to amend the safety plan so as to eliminate the no-contact order. However, the court also sua sponte ordered the Mother’s teenage sons to undergo “therapeutic assessments ... to determine their individual self-protective capacities.” It is this portion of the order that the Mother seeks to quash in this proceeding.
To be entitled to certiorari relief, the Mother must show that the trial court’s order departs from the essential requirements of the law and results in material harm that cannot be corrected on postjudgment appeal. See, e.g., J.C. v. Dep’t of Children & Family Servs., 83 So.3d 883, 887 (Fla. 2d DCA 2012); Dep’t of Children & Family Servs. v. J.G., 67 So.3d 251, 253 (Fla. 2d DCA 2010); Dep’t of Children & Families v. L.D., 840 So.2d 432, 435 (Fla. 5th DCA 2003). The question of whether the order results in material harm that cannot be corrected on postjudgment appeal constitutes a jurisdictional test, while the question of whether the order departs from the essential requirements of the law constitutes a decision on the merits. See, e.g., Parkway Bank v. Fort Myers Armature Works, Inc., 658 So.2d 646, 649 (Fla. 2d DCA 1995). We address each question in turn.
Looking first at the jurisdictional question, we hold that any error in requiring S.K’s stepsons to undergo therapeutic assessments does, in fact, result in material harm that cannot be corrected on post-judgment appeal. Essentially, once S.K.’s stepsons are forced to undergo the assessments, the damage is done. Cf. Belair v. Drew, 770 So.2d 1164, 1166 (Fla.2000) (holding that order requiring parents to permit visitation with grandparents over their objection would result in irreparable harm if grandparental visitation statute was unconstitutional as the harm sought to be prevented would have already occurred); State, Dep’t of Revenue ex rel. Sharif v. Brown, 980 So.2d 590, 590 (Fla. 1st DCA 2008) (noting that subjecting a child to a potentially intrusive paternity test constitutes irreparable harm). If this court were to later determine on plenary appeal that the order for therapeutic assessments was in error, that determination could not alter what the current order has already mandated, and any error could not be remedied. Therefore, because the alleged error cannot be corrected at a later stage of the proceedings, we have certiora-ri jurisdiction to review the challenged portion of the order.
Turning to the merits, we hold that the trial court’s ruling departs from the essential requirements of the law in two ways. First, the ruling denied the Mother due process by ordering relief not requested in any of the pleadings. This court has held that entry of an order imposing conditions about which the parents had no notice or opportunity to be heard violates due process and constitutes a departure from the essential requirements of the law. See, e.g., A.W.P., Sr. v. Dep’t of Children & Family Servs., 10 So.3d 134, 135 (Fla. 2d DCA 2009); Aiello v. Aiello, 869 So.2d 22, 23 (Fla. 2d DCA 2004). Here, the Mother’s motion asked for the safety plan to be amended to allow S.K. to have contact with his stepsons. Neither the Mother nor the Department nor the Guardian ad Litem requested further assessments of the stepsons in connection with this motion. *15 Hence, the court unexpectedly imposed this condition without notice to the parties and without the opportunity for the Mother to be heard. On this basis alone, the trial court’s order must be quashed.
Second, the requirement that S.K.’s stepsons undergo therapeutic assessments does not relate in any manner to addressing or resolving the issues that brought them into care. As a general rule, case plan tasks and related activities imposed on parents and children must be “meaningful and designed to address [the] facts and circumstances upon which the court based” its determination regarding dependency, or, as in this case, the no-contact order. § 39.60S(l)(f). Further, those tasks “must be the least intrusive possible into the life of the parent and child, must focus on clearly defined objectives, and must provide the most efficient path to quick reunification or permanent placement given the circumstances of the case.” § 39.6012(l)(a). As these statutes indicate, case plan tasks should be imposed neither lightly nor routinely in the name of “an abundance of caution.” Further, case plan tasks may not be imposed based on the trial court’s inchoate concerns about child safety that are not rationally related to the particular facts and circumstances of the case at hand.
Here, the allegations that brought S.K’s stepsons into care were that S.K. had molested the nine-year-old daughter of his former girlfriend at a time several years earlier when he was living with her. There were no other allegations of any other sexual misconduct by S.K. Nevertheless, the trial court’s order requires three teenage boys to undergo assessments, apparently in an effort to determine whether they have the ability to protect themselves from S.K. if and when he is permitted to move back into the home. However, given the nature of the allegations against S.K. and the age and gender of the children at issue, this requirement bears absolutely no relationship to addressing the issues that brought them into care. Further, the record shows that S.K. and his stepsons have already been through family counseling, from which they were successfully discharged in 2013. Requiring S.K’s teenaged stepsons to undergo further therapeutic assessments that are not even remotely related to the reasons that resulted in the initial no-contact order is neither meaningfully designed to address the circumstances that brought them into care nor the least intrusive means possible to protect them. Hence, this portion of the trial court’s order departs from the essential requirements of the law.
For both of these reasons, we grant the Mother’s petition for writ of certiorari and quash the portion of the trial court’s order that requires R.T., S.T., and K.T. to undergo therapeutic assessments.
Petition granted.
CASANUEVA and KELLY, JJ„ Concur.

. Between the time the children were sheltered and when the Mother completed her case plan, her two oldest children reached the age of 18. Thus, the case before us involves only the Mother's three oldest sons, who are ages 16, 14, and 12 as of the date of this opinion.