NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

GAWKER MEDIA, LLC; NICK DENTON; )
and A.J. DAULERIO, )
                                )
        Petitioners, )
                                )
v. )     Case No. 2D15-2857
                                )
TERRY GENE BOLLEA, professionally )
known as HULK HOGAN, )
                                )
        Respondent. )
_____ )

Opinion filed July 2, 2015.

Petition for Writ of Mandamus to the Circuit
Court for Pinellas County; Pamela A.M.
Campbell, Judge.

Gregg D. Thomas and Rachel E. Fugate of
Thomas & LoCicero PL, Tampa; and Seth
D. Berlin and Alia L. Smith of Levine
Sullivan Koch & Schultz, LLP, Washington,
District of Columbia, for Petitioners.

David M. Caldevilla of de la Parte & Gilbert,
P.A., Tampa; Kenneth G. Turkel and
Christina K. Ramirez of Bajo Cuva Cohen &
Turkel, P.A., Tampa; and Charles J. Harder
and Douglas E. Mirell of Harder Mirell &
Abrams LLP, Los Angeles, California, for
Respondent.

NORTHCUTT, Judge.

This controversy sprang from a seed planted sometime in 2006, when Terry Bollea, a celebrated former professional wrestler known publicly as "Hulk Hogan," had sex with Heather Clem, then married to Bollea's friend Todd Clem, a "shock jock" radio personality whose nom de scène is "Bubba the Love Sponge." The encounter was videotaped, with audio, allegedly without Bollea's knowledge. Six years later, in October 2012, a celebrity news and gossip website named Gawker.com posted an excerpt of the videotape to the Internet. Litigation ensued.

After a brief initial foray into federal court, in December 2012 Bollea filed suit in Florida's Sixth Circuit seeking injunctive relief and damages from Heather Clem, sundry entities and individuals affiliated with the Gawker site, and others. The circuit court case is ongoing, and it has darkened our door more than once.[1] Before us today is a mandamus proceeding in which the Gawker defendants contend that the circuit court's June 19, 2015, order setting trial for the week of July 6 deviates from Florida Rule of Civil Procedure 1.440. Indeed the order violates the rule, and we grant the petition.

To place the issue in proper context, it must be noted that one of the initial Gawker defendants was a Budapest-based company named Blogwire Hungary Szellemi Alkotást Hasznosító, KFT. Blogwire contested the attempted exercise of Florida long-arm jurisdiction over it, and it appealed the circuit court's order denying its

---

[1]Blogwire Hung. Szellemi Alkotst Hasznost, KFT v. Bollea, 162 So. 3d 1116 (Fla. 2d DCA 2015); Gawker Media, LLC v. Bollea, 160 So. 3d 424 (Fla. 2d DCA 2014); Bollea v. Clem, 151 So. 3d 1241 (Fla. 2d DCA 2014); Gawker Media, LLC v. Bollea 129 So. 3d 1196 (Fla. 2d DCA 2014).

motion to dismiss on that ground. Consequently, and significantly, long after the other defendants either had been dismissed from the case or had filed answers and affirmative defenses to Bollea's complaint, Blogwire had not done so. On April 17, 2015, this court reversed and remanded for further proceedings on Blogwire's motion to dismiss. Blogwire Hung. Szellemi Alkotst Hasznost, KFT v. Bollea, 162 So. 3d 1116 (Fla. 2d DCA 2015).

While Blogwire's appeal was pending in the fall of 2014, Bollea grew eager to place at least part of the action at issue. He moved the circuit court to sever the claims against Blogwire from the balance of the case and to set the claims against the other defendants for trial. Over the Gawker defendants' strenuous objections, the court granted the motion. By order dated November 4, 2014, the court severed the claims as mentioned, and it tentatively scheduled trial against all defendants other than Blogwire for July 2015. At a hearing the next month, the court finalized the trial date as July 6, memorializing the same in a written order setting trial entered February 18, 2015. The Gawker defendants challenged both rulings by petitions for writ of certiorari, contending that severing defendants is not permitted and that, because Blogwire had not answered the complaint, the case was not at issue and could not be set for trial. We consolidated the petitions and, on May 7, 2015, we quashed both orders.[2] Gawker Media, LLC v. Bollea, Case Nos. 2D14-5591, 2D15-1259, consolidated.

_____

[2]Our May 7, 2015, order simply informed the parties of our ruling and advised that an opinion explaining our reasoning would follow. However, subsequent events, which we will describe, may have mooted that proceeding.

-3-

The instant proceeding was occasioned by what happened in the following weeks. Bollea was determined to maintain the July 6 trial date, if possible. In a May 19, 2015, letter to the judge and again at a May 29 motions hearing, his counsel asked the court to keep the July 6 date reserved, theorizing that if Bollea voluntarily dismissed Blogwire from the case, the issues raised in the certiorari proceeding would vanish and his suit could proceed to trial against the other defendants as planned. At the May 29 hearing the court agreed to keep the July 6 trial date open. It also orally granted Bollea's pending motion to file an amended complaint seeking punitive damages.

As foretold, on June 18, the day before a scheduled case management conference, Bollea filed a notice of voluntary dismissal with prejudice as to Blogwire and filed his amended complaint seeking punitive damages by interlineation in the prayer for relief. He also filed a "notice that action is still at issue," asking the circuit court to reset the case for trial beginning on the previously scheduled date, July 6.

The next day, June 19, the circuit court entered a written order reflecting its earlier oral ruling that Bollea could amend his complaint to seek punitive damages. The order also stated that "[n]o further pleading by Defendants in response to plaintiff's Amended Complaint, as amended by interlineation, is required, and Gawker Defendants are deemed to have denied Mr. Bollea's claim for punitive damages."

In the meantime, on the morning of June 19, the Gawker defendants had filed a written objection to Bollea's notice that the case was at issue, pointing out among other things that under rule 1.440 a case is not at issue until twenty days have elapsed after the pleadings are closed. At the case management conference that day, the

Gawker defendants emphatically opposed setting the case for trial. But the circuit court, persuaded by Bollea's side that it could disregard the opponents' objections as innocuous technicalities, entered a written order setting trial for July 6. Three days later, on June 22, the Gawker defendants filed the instant proceeding in this court.[3]

Although we easily understand why Bollea and the circuit court went to lengths to preserve the July 6 trial date, their efforts were futile from the outset—by the time the court entered its June 19 order scheduling the trial for July 6, the window for doing so had been closed for weeks. Rule 1.440(a) provides that an action is deemed at issue "after any motions directed to the last pleading served have been disposed of or, if no such motions are served, 20 days after service of the last pleading." Thereafter, under subsection (b) a party must serve a notice that the action is at issue and ready to be scheduled for trial. Per subsection (c), the court must then enter an order setting trial no fewer than thirty days hence. The rule thus prescribes a minimum interval of fifty days between service of the last pleading and commencement of trial.

Fifty days prior to July 6 was May 17, which was a Sunday. Therefore, to permit a trial on July 6, the last pleading in the case must have been served no later than Friday, May 15; Bollea's notice that the action was at issue must have been filed

---

[3]The Gawker defendants initially pursued relief by filing a motion in the earlier certiorari case. They asked us to enforce our May 7, 2015, ruling by quashing the June 19 order setting trial or, "[t]o the extent that a motion to enforce [the] prior order is the improper remedy to seek in this instance, . . . to convert their motion to the appropriate form in which to permit consideration of their application." By separate order we have treated the Gawker defendants' motion as a petition for writ of mandamus and Bollea's response to the motion as a response to that mandamus petition.

no sooner than June 4 or later than June 6; and the court's order setting trial must have been entered no later than June 6.

None of that happened, of course. As of May 15, the case simply was not at issue. This court had quashed both the order severing the claims against Blogwire from the rest of the case and the February order setting the action against the other defendants for trial. Blogwire had yet to answer Bollea's complaint; its motion to dismiss for lack of personal jurisdiction was pending and awaiting further proceedings pursuant to this court's disposition of Blogwire's appeal the previous month. Finally, as of May 15 the question whether Bollea would be permitted to amend his pleadings to seek punitive damages was unsettled, and it would not be decided until the motions hearing on May 29.

Bollea attempted to eliminate the Blogwire hindrance by dismissing it from the suit on June 18. But according to rule 1.440, this was far too late for purposes of a July 6 trial date. (In fact, it was already too late when Bollea's counsel first raised the possibility of dismissing Blogwire in his May 19 letter to the judge.) And in any event, Bollea filed his amended complaint seeking punitive damages from the other defendants on June 18, as well. Even in Blogwire's absence, then, under rule 1.440 the case against the remaining defendants would not be at issue until twenty days later, on July 8. Even if the circuit court acted on that very day, it could not set a trial date earlier than August 7.

This was not altered by the court's declaration that the defendants were excused from responding to Bollea's new punitive damages claim. Rule 1.440(b)

provides that "[t]he party entitled to serve motions directed to the last pleading may waive the right to do so by filing a notice for trial at any time after the last pleading is served." In other words, the rule grants that party, not the court, discretion to dispense with the prescribed twenty-day interlude before the action is at issue. Regardless, even if Bollea's and the court's machinations had placed the action at issue on June 19, at that point the court could set trial no earlier than July 19.

The June 19 order setting trial for July 6 plainly violated rule 1.440. For many years, the appellate courts of this state have emphasized that the rule's specifications are mandatory and they have admonished trial courts to strictly adhere to them. Teelucksingh v. Teelucksingh, 21 So. 3d 37 (Fla. 2d DCA 2009); Broussard v. Broussard, 506 So. 2d 463 (Fla. 2d DCA 1987); R.J. Reynolds Tobacco Co. v. Anderson, 90 So. 3d 289 (Fla. 2d DCA 2012) (table decision) (text of order available at 2012 WL 2428282); Tucker v. Bank of N.Y. Mellon, 39 Fla. L. Weekly D789 (Fla. 3d DCA Apr. 16, 2014); Lurtz v. Bank of N.Y. Mellon, 162 So. 3d 11 (Fla. 4th DCA 2014); BAC Home Loans Servicing L.P. v. Parrish, 146 So. 3d 526 (Fla. 1st DCA 2014); Genuine Parts Co. v. Parsons, 917 So. 2d 419 (Fla. 4th DCA 2006); Precision Constructors, Inc. v. Valtec Constr. Corp., 825 So. 2d 1062 (Fla. 3d DCA 2002); Dep't of Revenue v. Marcovitch, 765 So. 2d 944 (Fla. 5th DCA 2000); Cardozo v. Cardozo, 705 So. 2d 145 (Fla. 4th DCA 1998); S.W.T. v. C.A.P., 595 So. 2d 1084 (Fla. 4th DCA 1992); Rivera v. Rivera, 562 So. 2d 833 (Fla. 1st DCA 1990); Lauxmont Farms, Inc. v. Flavin, 514 So. 2d 1133 (Fla. 5th DCA 1987); Bennett v. Cont'l Chems., Inc., 492 So. 2d

724 (Fla. 1st DCA 1986); <u>Fireman's Fund Ins. Co. v. Weissing</u>, 448 So. 2d 630 (Fla. 4th DCA 1984); <u>Foremost Ins. Co. v. Barkett</u>, 441 So. 2d 179 (Fla. 4th DCA 1983).

Indeed, a trial court's obligation to hew strictly to the rule's terms is so well established that it may be enforced by a writ of mandamus compelling the court to strike a noncompliant notice for trial or to remove a case from the trial docket. <u>Anderson</u>, 90 So. 3d at 289, 2012 WL 2428282 at *1; <u>Parsons</u>, 917 So. 2d at 421; <u>Weissing</u>, 448 So. 2d at 631; <u>Barkett</u>, 441 So. 2d at 180.

Still, notwithstanding the compulsory nature of rule 1.440, in some instances appellate courts have held that a party waived its objection to an order setting trial contrary to the rule. For example, in <u>Parrish v. Dougherty</u>, 505 So. 2d 646 (Fla. 1st DCA 1987), the appellant's attorney appeared at the trial and participated without objecting to the manner in which it had been set. In <u>Correa v. U.S. Bank National Ass'n</u>, 118 So. 3d 952 (Fla. 2d DCA 2013), the appellant agreed to a rescheduled trial date, participated in the trial, and made no objection to any deviation from rule 1.440. In both instances, the appellants were deemed to have waived their assertions of error based on the rule. For two reasons, however, such cases have no bearing here. First, of course, is that the Gawker defendants began insisting on compliance with rule 1.440 and objecting to the July trial date in the fall of 2014, and they consistently have done so ever since.

The second reason that the waiver cases are inapplicable to this proceeding is more nuanced but nonetheless significant: whereas this is a mandamus proceeding, those cases were plenary appeals from final judgments. The two types of

proceedings serve very different purposes, entailing very different requirements. In an appeal from a final judgment the lower court's rulings are reviewed for reversible legal error. Generally speaking, a judgment may be reversed only for an error that has been preserved by timely objection in the lower court and that has prejudiced the complaining party in a way that likely affected the result. Goldschmidt v. Holman, 571 So. 2d 422 (Fla. 1990) (stating no judgment may be reversed unless a court finds error resulting in a miscarriage of justice); see also § 59.041, Fla. Stat. (2015) (same); Aills v. Boemi, 29 So. 3d 1105 (Fla. 2010) (holding that, except in cases of fundamental error, an appellate court cannot consider any ground for objection not presented to the trial court). Thus, the appellant's failure to make a timely objection waives the issue on appeal, as happened in Parrish and Correa.

Mandamus is a different animal altogether. Its purpose is not to review a lower court ruling for prejudicial error; rather, it is meant to enforce the respondent's unqualified obligation to perform a clear legal duty. State ex rel. Buckwalter v. City of Lakeland, 150 So. 508 (Fla. 1933). If the petitioner is entitled to demand performance of the duty, he or she need not preserve the issue beyond making the demand. Further, it is unnecessary for the petitioner to suffer prejudice as a result of the respondent's dereliction. All that must be shown is that (1) the respondent is duty-bound to act under the law, and (2) the respondent has failed or refused to do so. Pleus v. Crist, 14 So. 3d 941 (Fla. 2009). A third and final element is that the petitioner must have no adequate legal remedy for the respondent's failure to carry out its duty. Id.; Sturdivant v. Blanchard, 422 So. 2d 1028 (Fla. 1st DCA 1982).

-9-

By this point in our discussion it is obvious that the first two elements have been satisfied here. The third element is present, as well. It is true that the Gawker defendants have available to them the legal remedy of pursuing an appeal from any future final judgment, in which they could complain of the errant order scheduling the trial. But owing to the mentioned differences between a mandamus proceeding and an appeal, the appellate remedy is not an <u>adequate</u> one. As we have established, a party is absolutely entitled to strict conformance with the terms of rule 1.440, including its mandated fifty-day hiatus between the service of the last pleading and the trial date. Whereas a writ of mandamus can preserve and effectuate this right in full, an appeal following entry of final judgment is inherently incapable of doing so because the appellant already will have been forced to trial in violation of the rule.

To be sure, a number of the authorities we have cited as exemplifying strict enforcement of rule 1.440 have been appeals from final judgments as opposed to pretrial writ proceedings. But those appeals simply could not have afforded relief commensurate with that available by writ of mandamus. An appellate reversal and remand for a new trial many months after the appellant was forced into the first trial in violation of rule 1.440 is a far and lesser cry from a writ of mandamus enforcing the rule prior to the offending trial date.

An appeal from a final judgment is an inadequate remedy for yet another significant reason. To the extent that in an appeal the court must be concerned with whether an infringement of the appellant's rights has been preserved for review and has prejudiced the appellant, and insofar as the court otherwise must apply appellate

-10-

decisional rules that are inapplicable to mandamus proceedings, the appellant's rights have been diminished by the court's inability to unqualifiedly enforce them.

Again, in some of the cases cited previously the appellate courts granted relief without apparent concern for these limiting principles of appellate review. But, certainly, such magnanimity on the part of an appeal court panel cannot be predicted or depended upon, as the appellants learned in HSBC Bank USA, N.A. v. Serban, 148 So. 3d 1287 (Fla. 1st DCA 2014) (holding that a violation of rule 1.440 caused no harm), and Labor Ready Southeast, Inc. v. Australian Warehouses Condominium Ass'n, 962 So. 2d 1053 (Fla. 4th DCA 2007) (holding that under the circumstances of the case the appellant was not prejudiced by violation of rule 1.440). See also Mourning v. Ballast Nedam Constr., Inc., 964 So. 2d 889 (Fla. 4th DCA 2007) (to same effect). In those cases the appellate courts, applying decisional rules governing appeals, declined to enforce the trial courts' clear legal duty to strictly comply with rule 1.440. Thus, they illustrate the inadequacy of an appeal from a final judgment as a remedy for a trial court's failure to perform its duties under the rule. Moreover, because appellate rules of decision are inapplicable to mandamus proceedings, the holdings in Serban, Labor Ready, and others of their ilk are not germane here.

The same is true of the few cases in which deviations from rule 1.440 have been challenged by petitions for writ of certiorari. The decisional rules governing certiorari are even more restrictive than those at play in appeals. Citizens Prop. Ins. Corp. v. San Perdido Ass'n, 104 So. 3d 344, 351 (Fla. 2012) (stating that a departure from the essential requirements of law necessary for the issuance of writ of certiorari

must be "something more than just a legal error"); Haines City Cmty. Dev. v. Heggs, 658 So. 2d 523, 527 (Fla. 1995) (noting that a departure from the essential requirements of law must extend "far beyond legal error") (quoting Jones v. State, 477 So. 2d 566, 569 (Fla. 1985) (Boyd, C.J., concurring specially))). Even so, in Globe Life & Accident Insurance Co. v. Preferred Risk Mutual Insurance Co., 539 So. 2d 1192 (Fla. 1st DCA 1989), the court held that an order setting the case for trial in the absence of a notice that the case was at issue violated the essential requirements of law and resulted in a miscarriage of justice, warranting a writ of certiorari.

But in a more recent certiorari case involving a departure from rule 1.440, the Third District declined to issue the writ, observing that the petitioner was required to demonstrate more than a simple legal error. Sundale, Ltd. v. Williams Paving Co., 913 So. 2d 740 (Fla. 3d DCA 2005). Rather, the court wrote, the petitioner had to establish why it had no adequate remedy on appeal from a final judgment. The court observed that "[petitioner] has not even attempted to allege how an appeal cannot remedy this legal error." Id. at 740.

Sundale is problematic for two reasons. First, as we have shown, the notion that an appeal from a final judgment is adequate to remedy a violation of rule 1.440 is plainly incorrect. Second, Sundale misstated the certiorari test in a slight but important way. Contrary to Sundale's suggestion, certiorari may be precluded not by the availability of a mechanism for correcting the error itself; rather, the remedy must alleviate the harm that results from the error. See, e.g., J.C. v. Dep't of Children & Family Servs., 83 So. 3d 883, 887 (Fla. 2d DCA 2012) (observing that to obtain a writ of

-12-

certiorari the petitioner must demonstrate that the trial court departed from the essential requirements of law and that the trial court's order "caused irreparable harm that cannot be remedied on postjudgment appeal"). In many certiorari cases, this difference may be an abstraction without much practical impact. But the distinction is hugely important in a mandamus proceeding, which focuses only on the duty owed and failed by the respondent and is wholly unconcerned with whether the petitioner has been injured by the respondent's dereliction.

Notwithstanding our view that Sundale was incorrectly decided and that, as a certiorari proceeding, it is immaterial to this case, we likely should address its unfortunate influence on two previous decisions by this court. In 2011, we issued what was in effect a citation per curiam decision denying a petition for writ of mandamus in reliance on Sundale. Dolan v. Bank of Am., 63 So. 3d 761 (Fla. 2d DCA 2011) (table decision) (text of order available at 2011 WL 2565556). The result in that case might well have been correct. But as we have explained, Sundale, a certiorari case, should have played no part in the disposition of that mandamus proceeding.

More troubling is our decision two years later in Jay Properties Beach Condo LLC v. Wells Fargo Bank, N.A., 146 So. 3d 34 (Fla. 2d DCA 2013) (table decision) (text of order available at 2013 WL 6905332). There, we denied an emergency petition for writ of certiorari apparently on the ground that "[a] claim that the trial court erred by scheduling the case for trial is reviewable on appeal and not by petition for writ of certiorari," citing Sundale. As we have seen, that is simply untrue.

Ironically, sandwiched between those two mistaken cases was our 2012

-13-

decision in <u>Anderson</u>, 90 So. 3d 289, 2012 WL 2428282 *1. In that mandamus case we quashed an order denying the petitioner's motion for continuance of trial and ordered further proceedings in compliance with rule 1.440. Unsurprisingly, <u>Sundale</u> was not mentioned in that order.

We discuss these dispositions because Bollea emphasizes <u>Jay Properties</u> in the response he filed in this case. He maintains that it is controlling here, and that we cannot grant the Gawker defendants the relief they seek without departing from our own precedent. But the fact is that we are not bound by the results or reasoning in any of those cases. The reason is that <u>Dolan</u>, <u>Jay Properties</u>, and <u>Anderson</u> all were unpublished dispositions. The disposition orders are discoverable online, but they were not meant to be printed in the official reporter of this court's decisions. Indeed, in the printed reporter they appear merely as entries among the table decisions; the associated "opinions" are not reproduced. As such, they have no precedential value. <u>See</u> <u>Citizens Prop. Ins. Corp. v. Ashe</u>, 50 So. 3d 645, 651 n.3 (Fla. 1st DCA 2010). They do not enunciate the law of this district, and they are of no consequence to our decision today.

We grant the petition for writ of mandamus. The circuit court shall straightaway rescind its June 19, 2015, order setting this action for trial and remove the action from the July 6, 2015, trial docket. This direction is effective immediately, and it shall remain in force notwithstanding the filing of a motion for rehearing, if any.


CASANUEVA and CRENSHAW, JJ., Concur.

-14-