LaROSE, Judge.
Ned Pole appeals his conviction and sentence for direct criminal contempt. We have jurisdiction. See Fla. R. App. P. 9.140(b)(1)(A). He argues that he was entitled to counsel at the contempt hearing. The trial, court did not comply with the requirements for conducting a direct.criminal contempt proceeding under the procedural protections of Florida Rule of Criminal Procedure 3.830. We also conclude that Mr. Pole’s conduct, at most, constituted indirect criminal contempt to which the protections of Florida Rule of Criminal Procedure 3.840 apply. Accordingly, we reverse and direct the trial court to vacate the contempt order.

Relevant Facts

The contempt proceeding against Mr. Pole stemmed from a divorce action filed by his wife, The trial court scheduled a final hearing on this civil matter for the morning of September 8, 2014, On September 3, Mr. Pole filed a pro se motion to continue the hearing. He claimed that he was unemployed and unable to obtain counsel. The trial court denied the motion. Our record does not indicate whether Mr. Pole received a eopy of the order denying his motion prior to the scheduled final hearing.
Because we do not have a complete transcript of the September 8 proceeding, we can glean what happened only from the text of the contempt order. Apparently, Mr. Pole called the trial court that morning to inquire about his motion to continue; he learned that the trial court had denied the motion. Mr. Pole said that he would be about thirty minutes late for the hearing, Mr. Pole arrived thirty-eight minutes late looking disheveled and acting “some: what confused.” Mr. Pole disclaimed, receipt of an earlier voicemail message notifying him that his continuance request was denied. He. volunteered that he had drunk two beers the prior evening. He denied being under the influence of alcohol, medication, or illegal drugs. Yet, Mr. Pole “kept interrupting the Court as the Court explained to him the ruling on his request to continue. His interruptions continued throughout the proceedings.” Rather than initiate contempt proceedings at this point, it appears -that the .trial court, at Mr. Pole’s suggestion, directed him to the drug lab for drug and alcohol testing. The results were negative for drugs, but positive *964 for alcohol; the breathalyzer readings were .208 and .216.
The trial court then informed Mr. Pole that it was conducting a direct criminal contempt hearing as a result of his behavior. The trial court reminded him that he was late and concluded that he was under the influence of alcohol. The conduct “embarrassed, hindered and obstructed th[e] Court in the administration of justice and/or his actions interfered with a judicial function.... [D]ue to his actions, the Final Hearing [in the dissolution action] ha[d] to be continued because the allocated time had expired and ... he was not in a condition to represent himself.”
The trial court gave Mr. Pole an opportunity to show cause why he should not be held in direct criminal contempt. He repeated that he had only two beers the night before. Mr.'Pole stated that he did not drive to the courthouse himself be-bause he did not want to violate the law. Mr. Grimm, who had driven Mr. Pole to the courthouse that morning, testified that when he arrived at Mr. Pole’s home, Mr. Pole was not ready. Mr. Grimm suspected that Mr. Pole was under the influence of alcohol. The trial court held Mr. Pole in direct criminal contempt, adjudicated him guilty, and sentenced him to fifteen days in jail. On appeal, Mr. Pole argues that the trial court should have given him an opportunity to seek counsel for the contempt hearing.

Plank v. State and the Contemnor’s Right to Counsel

Our precedent holds that a contémnor is entitled to counsel in a direct criminal contempt proceeding. Al-Hakim v. State, 63 So.3d 1171, 1174 (Fla. 2d DCA 2011); Woods v. State, 987 So.2d 669, 674 (Fla. 2d DCA 2007). The Fourth District agrees. See Hayes v. State, 592 So.2d 327, 329 (Fla. 4th DCA 1992). However, the First District holds othérwise. See Plank v. State, 130 So.3d 289, 290 (Fla. 1st DCA 2014). Because of this interdistriet conflict, the supreme court agreed to hear Plank to determine “whether an individual is entitled -to counsel in direct criminal proceedings before incarceration is imposed as punishment.” Plank v. State, 190 So.3d 594, 596 (Fla.2016); see art. V, § 3(b)(3), Fla. Const.; Fla. R. App. P. 9.030(a)(2)(A)(iv). We anxiously awaited the supreme court’s opinion in Plank, hoping for guidance on the conflict issue. The supreme court issued its Plank decision on March 17, 2016. The decision is now final; the mandate issued on April 14, 2016. Apparently, neither the State nor Mr. Plank sought rehearing. See Florida Supreme Court Case Docket: Case Number: SCU~ Florida Supreme Court, http://jweb. flcourts.órg'pls/docket/ds_dócket (last visited May 4,2016).
It is not evident to us, however, that the supreme court resolved the conflict issue. Three justices joined in an opinion concluding that there is no right to counsel in a direct criminal contempt proceeding as long as any incarceration does not exceed six months. Plank, 190 So.3d at 596. These three justices .also concluded that Mr. Plank’s conviction should be vacated because his conduct amounted to no more than indirect criminal contempt. Id. One justice concurred in result only. Id. The three remaining justices agreed that Mr. Plank’s conduct did not constitute direct criminal contempt and concurred in the opinion to the extent it vacated Mr. Plank’s conviction. Id. at 608. These justices, however, thought that Mr. Plank had a right to counsel in a direct criminal contempt proceeding. Id. Thus, six justices joined in an opinion holding that Mr. Plank had not committed direct criminal contempt. No majority joined an opinion resolving the conflict issue.
*965 “Under the Florida Constitution, both a binding decision and a binding prec-edential opinion are created to the extent that at least four members of the Court have joined in an opinion and decision.” Santos v. State, 629 So.2d 838, 840 (Fla.1994) (citing art. V,' § 3(a), Fla. Const.). “In [this] context ..., a ‘decision’ is the result reached by the Court in the case, as distinguished from the ‘opinion.’” Id. at 840 n. 1. “A concurring in result only opinion indicates agreement only with the decision, that is, the official outcome and result reached, but a refusal to join in the majority’s opinion and its reasoning.” Harry Lee Anstead, Gerald Kogan, Thomas D. Hall & Robert Craig Waters, The Operation and Jurisdiction of the Supreme Court of Florida, 29 Nova L. Rev. 431, 460 (2005); see also Byrd v. State, 880 So.2d 616, 617 (Fla.2004) (holding that First District opinion declaring statute invalid was not the actual decision' of the district court because only one of three judges signed it and the other two judges concurred in result — affirming the trial court’s denial of Byrd’s motion to dismiss — but did not. join in the opinion); Floridians for a Level Playing Field v. Floridians Against Expanded Gambling, 967 So.2d 832, 834 (Fla.2007) (holding that vote of an appellate court judge concurring in the judgment without' indicating agreement with decision to certify question did not count as agreeing with certification).
Because Plank was a. three-three decision on the right to counsel in a direct contempt proceeding, the supreme court, apparently, did not resolve the certified conflict between the First District in Plank and the Second and Fourth Districts in Al-Hakim, 53 So.3d 1171; Woods, 987 So.2d 669; and Hayes, 592 So.2d 327. Because six justices concurred in an opinion concluding that Mr. Plank’s conduct did not amount to direct criminal contempt, Plank does not require us to dwell much longer on the conflict issue pressed before the supreme court and raised by Mr. Pole, here.

The Need for an Adequate Record

As guidance for our able and busy trial judges, however, we note, as an initial matter, that to affirm a conviction of direct criminal contempt, “there must be evidence in the record that the trial court complied with the procedural requirements of Fla. R. Crith. P. 3.830 ..: for prosecuting a direct criminal contempt.” Chamberlain v. Chamberlain, 588 So.2d 20, 23 (Fla. 1st DCA 1991). “[T]he contemnor’s right to due process require[s] that the trial court ensure that a record is made of a criminal contempt proceeding.... [F]a-cially sufficient claims on plenary appeal from an adjudication of contempt ... which cannot be refuted by. the record will invariably mandate vacation of the'judgments.” Blalock v. Rice, 707 So.2d 738, 740 (Fla. 2d DCA 1997); see also Chamberlain, 588 So.2d at 23 (stating that the trial court must “ensure that a record of the entire sentencing proceeding is made and preserved in such a manner that it can be transcribed as needed” (quoting Fla. R. Crim. P. 3.721)). Our record includes a transcript of only the beginning of the dissolution hearing. The courtroom clerk announced, “And per the Judge we don’t need to be on the record.” Both parties acknowledge that the contempt proceeding was not recorded.
Because we do not have a-full record of the contempt proceeding, our appellate review is stymied. We recognize that the contempt proceeding against Mr. Pole arose in a civil division of the circuit court. Although a court reporter was present, we are also aware that' many' civil matters commonly proceed without a court reporter. Because the trial court went forward with a criminal proceeding a different set *966 of rales applied. ■ On this basis, .alone, we would be compelled to reverse.

Plank Redux; Indirect Criminal Contempt

 Even if armed with a complete record, we would still reverse because the trial court mischaracterized Mr. Pole’s misconduct as direct criminal contempt. Plank guides our reasoning. We must, briefly, return to the facts in Plank. While providing background information as a prospective juror, “[Mr. Plank] responded that he should not have to serve on a jury because he was .‘able to evade the military draft,’ worked thirteen-hour days, had a ‘4F’ military designation, and was a drunk.” Plank, 190 So.3d at 598. Mr. Plank slept during some of jury selection. Id. at 598-99. Some jurors complained that he smelled of alcohol and that they had trouble waking him up at a break. Id. at 599. The trial court directed an officer to administer a breathalyzer test, which occurred outside the judge’s presence. Id. at 597.
An hour later, the trial judge held a contempt hearing. Id. The trial court informed Mr. Plank that his blood alcohol level was .111 and expressed its belief that Mr. Plank may have driven to the courthouse under the influence of alcohol. Id. at 597-98. . Mr. Plank testified that he had worked late delivering magazines and had “only” a couple of beers in the morning. Id. at 599.
The trial court found Mr. Plank in direct criminal contempt for being drunk, disrupting jury selection,. and distracting other jurors. Id. at 598. The trial court sentenced him to thirty days in jail. Id. at 599. On appeal, Mr. Plank argued that he was entitled to seek counsel for the direct contempt proceeding. Id. The First District affirmed. Plank v. State, 130 So.3d 289, 290 (Fla. 1st DCA 2014). As discussed earlier, six members of the supreme court — three members in the decision and three in Justice-Pariente’s concurrence — agreed to reverse, concluding that the trial court erred in failing to appoint counsel for Plank because his conduct did not involve direct criminal contempt. Plank, 190 So.3d at 600 (LaBarga, C.J., and Lewis and Polston, JJ.), 608 (Pariente, Quince, and Perry, JJ., concurring in part and dissenting in part).
“In order to be considered direct criminal contempt, all of the acts underlying the contemptuous conduct must be committed in open court in the presence of the judge, ‘where all of the essential elements of the misconduct are under the eye of the court [and] are actually observed by the court.’” Id. at 606 (quoting In re Oliver, 333 U.S. 257, 275, 68 S.Ct. 499, 92 L.Ed. 682 (1948)); see also Fla. R. Crim. P. 3.830 (“A criminal contempt may be punished summarily if the court saw or heard the conduct constituting' the contempt committed in the actual presence of the court.”). Otherwise, the allegedly contemptuous conduct is indirect criminal contempt, subject to the more generous procedural safeguards set forth in rule 3.840. Plank, 190 So.3d at 606; Kelley v. Rice, 800 So.2d 247, 251 (Fla. 2d DCA 2001). “Whenever a judge must take testimony during a criminal contempt proceeding or rely on additional evidence not directly observed by the trial judge, the proceeding is no longer direct criminal contempt but becomes indirect' criminal contempt.” Plank, 190 So.3d at 607. “[K]nowledge acquired from the testimony of others, or even from the confession of the accused, would not justify conviction without a trial in which there was an opportunity for defense.” In re Oliver, 333 U.S. at 275, 68 S.Ct. 499.
*967 The supreme court explained why Mr. Plank’s conduct was indirect, rather than direct, criminal contempt, as follows:
In determining whether Plank committed criminal contempt, the trial judge took testimony from a probation officer regarding Plank’s blood-alcohol level after the officer administered a breathalyzer test. In addition, the trial judge relied on off-the-record statements from the jurors that Plank smelled of alcohol and Plank’s own admissions that he drank before attending jury duty and that he drove to the courthouse.
Plank, 190 So.3d at 606. Similarly, here, the trial judge took testimony from Mr. Grimm concerning Mr. Pole’s behavior before arriving at the courthouse. The trial court relied on Mr. Pole’s own admissions that he drank two beers the previous night and did not drive to the courthouse so as not to break £he law. The trial court also relied on lab results obtained outside its presence.'
“[B]eeause of the summary nature of the procedures in direct criminal con-tempts, any doubt as to the category in which the act falls should be resolved in favor of the contemnor.” Fisher v. State, 248 So.2d 479, 488 (Fla.1971); accord Turner v. State, 288 So.2d 157, 160 (Fla. 2d DCA 1973). Based- on Plank, we conclude that the trial court erred in failing to allow counsel for Mr. Pole because the conduct at issue did not involve direct criminal contempt. See Fla. R. Crim. P. 3.840(d). Therefore, we reverse Mr. Pole’s conviction for direct criminal contempt and direct the- trial court to vacate the order on appeal.

Conclusion

Reversed and remanded for proceedings consistent with this opinion.
CASANUEVA, J., Concurs with opinion.
LUCAS, J., Concurs in part and dissents in part.