LUCAS, Judge,
dissenting.
I fully agree with the majority’s characterization of the petitions before us as reviewable only by mandamus. I also share Judge Wallace’s well-informed concerns about the use of videoconferencing technology within Baker Act court proceedings.
Nevertheless, I cannot join the court’s holding today because of two concerns I hold. The crux of the issue before us revolves around how one defines a ministerial, judicial duty for purposes of mandamus relief. My colleagues have applied a narrow definition of that duty in these cases (essentially holding that because no statute, court opinion, or procedural or administrative rule expressly requires judicial officers to appear in person over Baker Act hearings, no such requirement exists). At the same time, they appear to have adopted an expansive view of this extraordinary writ for future cases: *167 “Where a rule [of procedure] establishes a nondiscretionary duty and the requirements for issuance of a writ of mandamus are otherwise met, the petition should be granted.” See supra note 3. The latter point finds a level of support in certain general pronouncements we find in Florida law. But to my mind, some of the potential implications of enforcing procedural rules through mandamus have never been fully considered or, in truth, even acknowledged. The former point can be correct only with the tacit assumption that a judicial officer’s duty to preside over a trial or evidentiary hearing finds its entire being within published court opinions or procedural rules. My colleagues may be entirely correct in both regards, but I would address some of these ramifications before we carry (or cabin) the writ of mandamus to the boundaries they have demarked. Therefore, I respectfully dissent. I would answer the certified question in the affirmative for the reasons I will explain below.
I.
“A judge shall hear and decide matters assigned to the judge.... ” Fla.Code of Jud. Conduct, Canon 3. From time immemorial, judges and magistrates have heard and decided matters by coming to a central place, a court, where the people could present their cases.[9] Today, in Florida, the judicial duty to preside over trials and evidentiary hearings[10] follows this tradition and is grounded upon the constitutional right of access to our state’s courts guaranteed under the Florida Constitution. See art. I, § 21, Fla. Const. (“The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay.”); Bell v. Bell, 307 So.2d 911, 914 (Fla. 3d DCA 1975) (noting the “constitutional duty imposed on the judiciary” who is “duty bound to examine and consider the evidence for itself and to make a judicial determination”); see also De Clements v. De Clements, 662 So.2d 1276, 1283 (Fla. 3d DCA 1995) (observing that “the trial judge is the only elected constitutional officer with the organic right to determine a litigant’s case”). Unless waived, a judge’s personal presence is constitutionally mandated in a criminal jury trial. See Bryant v. State, 656 So.2d 426, 428 (Fla.1995) (“The presence of a judge, who will insure the proper conduct of a trial, is essential to the state and federally guaranteed rights of trial by *168 an impartial jury.”); Brown v. State, 538 So.2d 833, 835 (Fla.1989) (same).
In gleaning the extent of the judicial duty at issue here, we can, and should, look to the constitutional right of access to courts, precedent that expressly tethers a judge’s physical presence to a constitutional right, and the entirety of tradition and history. These bedrock principles, drawn together, fill the dearth of authority that my colleague, Judge Wallace, apprehends. But if there is any silence in the law on this issue, it must surely be ascribed to the fact that a judge or magistrate’s personal attendance at trial has been the assumed norm for as long as there have been courts and judges. In my view, a judge’s physical presence is simply a constituent component of his or her ministerial duty to preside over a trial or evidentiary hearing.
Proceedings arising under the Baker Act should be no exception to this duty. A hearing convened under section 394.467 is an evidentiary court proceeding, akin to a trial, where the rules of evidence must be followed, where arguments of counsel must be heard, and where a patient’s liberty interests will ultimately be at stake. See In re Beverly, 342 So.2d 481, 489 (Fla. 1977) (“The seriousness of the deprivation of liberty and the consequences which follow in adjudication of mental illness make imperative strict adherence to the rules of evidence generally applicable to other proceedings in which an individual’s liberty is in jeopardy.”); In re Holland, 356 So.2d 1311, 1313 (Fla. 3d DCA 1978) (“We fully recognize that involuntary hospitalization is a massive deprivation of liberty which the state cannot accomplish without due process of law.”); see also Chalk v. State, 443 So.2d 421, 422 (Fla. 2d DCA 1984) (holding that patient’s constitutional due process rights were violated when presiding judge prevented his attorney from presenting a closing argument at the conclusion of his involuntary placement hearing).
Were it not for the relatively recent expansion of videoconferencing technology, there would have been no question that the judicial officers who are the subject of these petitions violated a ministerial duty by not coming to the designated place where their docket would convene to preside over these evidentiary hearings. Cf. Beverly, 342 So.2d at 489; Bell, 307 So.2d at 914. In holding that no such duty exists, then, my colleagues have embraced an implicit assumption. They assume that the mere advent of a new technology somehow, of its own accord, upended what had been a rooted, commonly understood judicial duty and a hallmark of evidentiary court proceedings, where a judge or magistrate comes to court to preside. The majority has effectively—albeit with apt reluctance and remonstrations—excused the physical presence of judicial officers from Baker Act hearings because: (i) the Baker Act itself does not include a direction that they be physically present, (ii) their remote appearance has become feasible, and (iii) a rules committee may not have fully addressed that technological development.[11] Mandamus requires a close *169 review of the law to determine whether a legal duty has been established, to be sure. But I cannot believe that its application in these cases must turn, argumentum ex silentio, on the mere fact that a court or committee has yet to utter what had always, inarguably, been a quintessential, necessary feature of any trial or evidentia-ry hearing: a judicial officer’s physical presence. If there is any assumption to be made about the scope of a judicial officer’s duty to preside over Baker Act hearings, the majority has inverted it. While the court is right to certify a question of great public importance here, I would answer that question in the affirmative. In my opinion, a judicial officer bears an indisputable, legal duty to preside over a Baker Act hearing, in person, unless the litigants have waived his or her presence.
II.
I now turn to the other, related question these cases raise: from what sources can a court derive a “legal, ministerial duty” for judicial officers for purposes of mandamus relief? I have grounded my view of the judicial duty at issue in these cases, purposely, on the constitution, case authorities interpreting the scope of the constitutional right of access to courts, and the historic view of how our constitutionally created trial courts have traditionally operated. I have purposely avoided drawing rules of procedure within that analysis. My colleagues would cast the net of mandamus wider to include any Florida rule of court, so long as the rule is sufficiently nondis-cretionary “and the requirements for issuance of a writ of mandamus are otherwise met”—and they are not without precedent to support that proposition.[12]
Yet, I question whether a rule of procedure, on its own authority, can be likened to “a ministerial duty imposed by law on a public official.” See Sancho v. Joanos, 715 So.2d 382, 385 (Fla. 1st DCA 1998) (emphasis added) (citing City of Coral Gables v. State ex rel. Worley, 44 So.2d 298, 300-01 (Fla.1950)). As I interpret the outer boundaries of what violations of which legal duties will justify mandamus relief (admittedly, an unsettled area of the law), I believe the writ of mandamus ought to be limited to those ministerial, legal duties that the People have imposed upon then-public officials, either through legislation *170 or constitutional provision. Cf. Solomon v. Sanitarians’ Registration Bd., 155 So.2d 353, 356 (Fla.1963) (explaining that “official action is considered ministerial when it is arrived at as the result of the performance of a specific duty arising from legislatively designated facts. A ministerial duty is one which is positively imposed by law to be performed at a time and in a manner or upon conditions which are specifically designated by the law itself. ...”); Warren M. Goodrich & Al J. Cone, Mandamus in Florida, 4 U. Fla. L. Rev. 535, 535 (1951) (recognizing that “[a] characteristic of a democratic society is the protection afforded citizens against the abuse of public office” and noting that the writ of mandamus is “a protector of democratic rights”). Rules of procedure, qua rules, do nothing more than implement substantive law. See State v. Garcia, 229 So.2d 236, 238 (Fla.1969) (“Procedural law is sometimes referred to as ‘adjective law ... and has been described as the legal machinery by which substantive law is made effective.”); Williams v. State, 932 So.2d 1233, 1237 (Fla. 1st DCA 2006) (“Substantive law creates substantive rights; rules of procedure ... ‘merely provide the remedies to enforce rights.’ ” (quoting State v. Dorian, 619 So.2d 311, 313 (Fla. 3d DCA 1993))). To elevate a rule of procedure or judicial administration—drafted by a committee and adopted under authority relegated to the judiciary—to an equal status as a duty imposed by law would seem to pose something of a conceptual anomaly within our separation of powers. Cf. State v. Raymond, 906 So.2d 1045, 1048-49 (Fla.2005) (distinguishing rules of practice and procedure as the “method[s] of conducting litigation involving rights and corresponding defenses” from substantive law as “the law which creates, defines, and regulates rights, or ... which courts are established to administer”); Pole v. State, 198 So.3d 961, 972, 41 Fla. L. Weekly D1843a, D1846a, 2016 WL 4197955, at *6 (Fla. 2d DCA Aug. 10, 2016) (Casanueva, J., concurring) (“To afford the judicial branch with the power—through the passage of rules of procedure—to grant [the right to counsel] appears to me to be contrary to the separation of powers delineated by the constitution.”).
Moreover, extending the writ of mandamus to encompass procedural rules strikes me as a somewhat unobvious and unexamined outgrowth from a writ whose origin and purpose is already shrouded by an unobvious and largely unexamined development. See, e.g., Alto Adams & George John Miller, Origins and Current Florida Status of the Extraordinary Writs, 4 Fla. L. Rev. 421, 437-38 (1951) (“From these humble beginnings as a writ of restitution to office [the writ of mandamus] gradually expanded ... not only for ordering admission to ‘packed’ municipal corporations but also for enforcing exercise of jurisdiction by inferior tribunals ... and finally for compelling performance of ministerial duties generally” but noting that a thorough study of the origins of the writ of mandamus “remains to be made”); Paul R. Gugliuzza, The New Federal Circuit Mandamus, 45 Ind. L. Rev. 343, 352-53 (2012) (“The origins of the writ of mandamus are ‘very obscure,’.... Early American courts and the first U.S. Congress imported the view that mandamus was an extraordinary remedy designed to fix only jurisdictional errors.”); Edward Jenks, The Prerogative Writs in English Law, 32 Yale L. J. 523, 529-30 (1923) (attributing the original for-mulary of the writ of mandamus to Sir Edward Coke’s decision in Bagg’s Case, 77 Eng.Rep. 1271 (K.B.1616) and observing that “[m]andamus is perhaps the most puzzling of all the prerogative writs”). In the absence of a settled principle as to why a writ of mandamus ought to issue (we have *171 ample jurisprudence that tells us when), the majority leaves us with a formulation that all but invites an ever expanding reach of the writ’s jurisdiction, and in ways that could become difficult to reconcile or constrain with any meaningful coherence. Should the violation of any rule with non-discretionary aspects warrant mandamus relief? Under what circumstances? The only limitations my colleagues offer—that the procedural rule must be nondiscretion-ary and the “requirements ... for a writ of mandamus” must be met—are perhaps the best that can be articulated, and they amount to a tautology.
While the court is correct to characterize these petitions as seeking mandamus relief and rightly admonishes the actions of these judicial officers, it has missed a more proper resolution of these petitions, in part, because it may be searching in the wrong body of law for guidance. Rules of procedure and administration ought not to serve as mandamus grist for courts to expand and wield the coercive power of an extraordinary writ. Instead, we should look to the substantive law, statutory and constitutional, that the People have imposed upon their judicial officers. Within that body of law, I would find sufficient support to grant mandamus relief to these petitioners.

. Cf. Judges 4:4-5 ("And Deborah, ... she judged Israel at that time. And she dwelt under the palm tree of Deborah between Ra-mah and Bethel in mount Ephraim: and the children of Israel came up to her for judgment.”). Historically, without a judicial officer’s personal presence, a court was not considered to be in session. See Delafield v. Lewis Mercer Constr. Co., 115 N.C. 21, 20 S.E. 167, 167 (1894) ("There was once, to some extent, an idea prevalent that the term of a court extended to the last Saturday of the one, two, or three weeks for which it might be held, although the judge might have left. This idea of a court in session without a judge is not warranted by law.”); Boyd v. Teague, 111 N.C. 246, 16 S.E. 338, 338 (1892) ("The term of court is held by the judge, and there can be none after he leaves.”).

. The issue before us concerns judicial officers presiding over an evidentiary hearing that, by statute, is convened under the jurisdiction and authority of a circuit court and requires a determination from the evidence to be made by the presiding judicial officer. Judge Black’s opinion's citation to Department of Highway Safety & Motor Vehicles, Bureau of Administrative Reviews v. Fernandez, 114 So.3d 266 (Fla. 3d DCA 2013), has no bearing on this issue. That case addressed the propriety of a hearing officer’s telephonic appearance for a driver’s license revocation proceeding administered through the Department of Highway Safety and Motor Vehicles. See art. V, § 1, Fla. Const. ("The legislature may establish by general law a civil traffic hearing officer system for the purpose of hearing civil traffic infractions.”).

. Cf. The Fla. Bar Re: Rules of Judicial Admin., 462 So.2d 444, 445 (Fla.1985) (observing, in adopting the rules of judicial administration, "that all parties have an absolute right to prohibit the taking of testimony of a witness by communication equipment”); Fla. R. Jud. Admin. 2.530(b) (authorizing use of communication equipment "for a motion hearing, pretrial conference, or a status conference”). I fully share Judge Wallace's concerns about the qualitative shortcomings of videoconference court proceedings; indeed, my view of the judicial duty to preside over these proceedings in person protects litigants from the very serious problems he so thoroughly recounts. That this duty derives from the establishment of our courts and the lawful duty imposed on judges to hear and decide cases also, in my opinion, provides a more felicitous grounding for mandamus review in *169 general. However, if I am mistaken about the extent of a judge's duty to preside in person, if there is any uncertainty about the ministerial duty here, then we ought to look to the constitution, state statutes, or a court opinion interpreting the organic sources of ministerial duties—rather than issue a call- and-response to an unelected committee of lawyers and judges—for guidance.

. Although I suspect in many of the rulings in which we see a writ of mandamus issued to enforce a rule of procedure, one would only need to scratch the surface of the cited rule to discern a more substantive, legal duty that was being compelled. For example, our holding in Office of the Attorney General v. Shore, 41 So.3d 966 (Fla. 2d DCA 2010), focused on whether the clerk of the circuit court had complied with applicable appellate and judicial administration rules by forwarding copies of criminal case records to a public defender in CD-ROM format, but the underlying source of the clerk’s ministerial duty to compile and provide access to a record is founded in state statutes. See § 28.13, Fla. Stat. (2010); Radford v. Brock, 914 So.2d 1066, 1068 (Fla. 2d DCA 2005) (“The Clerk of the Circuit Court has a legal duty to maintain and to provide access to the records contained in its files unless the records are legally exempt from disclosure." (citing §§ 28.13; 119.01(1), (3); 119.011(1), (2), Fla. Stat. (2003))). Even in Gawker Media, LLC v. Bollea, 170 So.3d 125 (Fla. 2d DCA 2015), we appeared to premise our issuance of mandamus as much on the force of well-established precedent as on the mandatory language of rule 1.440. Id. at 130 ("Indeed, a trial court’s obligation to hew strictly to the rule’s terms is so well established that it may be enforced by a writ of mandamus....’’)