NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

ULYSSES L. BROWN,                    )
                                     )
            Appellant,               )
                                     )
v.                                   )        Case No. 2D16-2791
                                     )
STATE OF FLORIDA,                    )
                                     )
            Appellee.                )
                                     )
_____     )

Opinion filed September 15, 2017.

Appeal from the Circuit Court for
Hillsborough County; Chet A. Tharpe,
Judge.

Howard L. Dimmig, II, Public Defender,
and Julius J. Aulisio, Assistant Public
Defender, Bartow, for Appellant.

Pamela Jo Bondi, Attorney General,
Tallahassee, and Brandon R. Christian,
Assistant Attorney General, Tampa,
for Appellee.

KHOUZAM, Judge.

        Ulysses L. Brown appeals his judgment and sentence for direct criminal

contempt.  The State concedes, and we agree, that the trial court erred by finding Mr.

Brown in direct criminal contempt.  Accordingly, we reverse the judgment and sentence

and remand with directions to vacate Mr. Brown's conviction.

On November 16, 2015, the State charged Mr. Brown with third-degree felony possession of cocaine, first-degree misdemeanor possession of marijuana, and possession of drug paraphernalia. His case was scheduled for trial on March 21, 2016. When the case was called that morning, Mr. Brown's counsel asked the court to pass the case so he could discuss with Mr. Brown the possibility of a plea agreement. The prosecutor advised the trial court that she would seek a continuance if she and Mr. Brown could not reach an agreement. When the case was recalled, Mr. Brown's counsel told the court that he had not had an opportunity to speak with Mr. Brown about a potential counteroffer but that it was unlikely the case would be resolved that morning.

The prosecutor asked to approach the bench, where the following discussion occurred:

> THE PROSECUTOR: Your Honor, it came to my attention that Mr. Brown is too impaired this morning to have any meaningful conversation with his attorney about a counteroffer or a resolution.
>
> THE COURT: Impaired by what?
>
> DEFENSE COUNSEL: I don't know. I just have reservations about entering into any type of plea agreement this morning.
>
> THE COURT: Do you smell alcohol on him? Do you smell alcohol on him?
>
> DEFENSE COUNSEL: Your Honor, I smell alcohol in the general vicinity including by his friend.
>
> THE COURT: All right.

The trial court put Mr. Brown under oath and asked if he was under the influence of narcotics or alcohol. Mr. Brown responded no, and the trial court ordered him to be taken into custody and immediately tested for drugs and alcohol.

When the case was again recalled, Mr. Brown's counsel objected, asserting that the trial court did not have the authority to take Mr. Brown into custody based on hearsay and that the test results should not be used against him.[1] Defense counsel further asserted that even if Mr. Brown were under the influence of alcohol, it would not violate a condition of his pretrial release. Additionally, he pointed out that Mr. Brown arrived on time, he was dressed appropriately, and after he was taken into custody, "he was able to explain not only why he was here, but he said that he was prepared and ready for trial, that he understood the potential outcomes in his case." The prosecutor responded that she "brought to the court's attention through Mr. Brown's attorney and [sic] the fact that he was unable to communicate with him to the point of having a conversation with him about plea options and not being able to proceed with court this morning." Mr. Brown's counsel disputed the prosecutor's characterization of his statement to her and told the trial court that he had informed her that he did not think they would be able to resolve the case that day and that she should seek a continuance as she intended. The trial court ruled:

> THE COURT: [DEFENSE COUNSEL], one thing we don't need to do is beat around the bush. You approached the bench. The state said that he was in no condition, being Mr. Brown was in no condition to carry on a meaningful conversation with you because of his condition.
>
> I asked you if the man had been drinking. You were hesitant. It was clear by your impressions towards me that you thought he had been drinking, that you could not carry on a logical conversation with him. You told me that you smelled alcohol around him.

---

[1]Though Mr. Brown challenges again on appeal the trial court's authority to take him into custody and order him to take a breathalyzer test, we do not reach this question.

It was clear to the court by what you said to me at the bench and your reaction that he had been drinking and he was in no condition or at least drinking and or on some type of a narcotic that he was in no condition to assist you in his defense for preparation of trial this morning. That's why the court had taken him into custody and ordered that he be drug tested as well as given an alcohol breath test.

When the case was again recalled, the trial court informed the attorneys: "He blew a .176 twice at the jail. I asked your client under oath whether or not he had consumed any alcoholic beverages or was under the influence of any narcotics or drugs. He told me no. He clearly is drunk." The trial court asked Mr. Brown to show cause why he should not be held in direct criminal contempt. Mr. Brown responded:

Your Honor, I did drink last night, Your Honor, because I was scared, Your Honor. Your Honor, I done been to prison. I don't want to go back to prison again. I did drink last night, Your Honor, and I did—when you say under the influence, I'm thinking you saying did I drink today. No. But last night, yes, I did, Your Honor.

The trial court then found: "You drank enough—whether you're telling me the truth or not, you drank enough to blow a .176 at 10:48 this morning and another at 10:51 this morning." The trial court held Mr. Brown in <u>direct</u> criminal contempt and sentenced him to thirty days in jail. On April 12, the trial court rendered a written order finding Mr. Brown in <u>direct</u> criminal contempt.[2]

In <u>Plank v. State</u>, 190 So. 3d 594, 606 (Fla. 2016),[3] the Supreme Court of Florida directed the vacation of an order finding a prospective juror in direct criminal

---

[2]Mr. Brown filed a petition for writ of habeas corpus in this court. We granted the petition on March 31, 2016, and the trial court ordered Mr. Brown to be released on April 1, 2016.

[3]This opinion issued four days before the trial court found Mr. Brown in direct criminal contempt.

- 4 -

contempt under circumstances somewhat similar to those in Mr. Brown's case. Mr. Plank made it clear during questioning that he did not want to serve as a juror, and he fell asleep at some point during the selection process. Id. at 596-97. Other prospective jurors complained that he smelled of alcohol and was difficult to awaken during a break. Id. at 597. At the trial court's direction, a probation officer administered a breathalyzer test outside the presence of the trial court. Id.

An hour later, the trial court held a contempt hearing. Id. The probation officer testified that the results from the breathalyzer test demonstrated that Mr. Plank had a blood-alcohol level of 0.111 and that he smelled of alcohol. Id. The trial court informed Mr. Plank that although he arrived for jury duty at 11:30 a.m., his blood-alcohol content was still 0.111 more than three hours later, suggesting that his blood-alcohol level had been even higher before he arrived. Id. The trial court provided Mr. Plank with the opportunity to explain why he should not be held in contempt, and Mr. Plank responded that he was up late the night before, he started work at 5:00 in the morning, and he could not afford to take time off of work to serve as a juror. Id. at 598. He admitted that he had driven himself to the courthouse. Id. The trial court found Mr. Plank in direct criminal contempt:

> All right. I'm going to find that you're in direct criminal
> contempt for not only coming to the courthouse drunk but it
> was also—in doing that, you disrupted the jury selection here
> this afternoon and distracted other jurors. Other jurors
> obviously noticed that you smelled of alcohol, were drunk.
> So I am finding you in contempt.

Id. The trial court sentenced Mr. Plank to thirty days in jail. Id. at 599.

Mr. Plank sought review of the order, and the First District certified as an issue in conflict whether an individual is entitled to counsel in direct criminal contempt

- 5 -

proceedings before incarceration is imposed as punishment. Plank v. State, 130 So. 3d 289, 290 (Fla. 1st DCA 2014), decision approved in part, quashed in part, 190 So. 3d 594 (Fla. 2016). After addressing the issue in conflict,[4] the supreme court held that because the allegedly contemptuous conduct for which Mr. Plank was incarcerated did not occur in the presence of the trial court, the trial court erred in finding Mr. Plank in direct criminal contempt. Id. at 605-06.

The supreme court explained that for conduct to be considered direct criminal contempt, "all of the acts underlying the contemptuous conduct must be committed in open court in the presence of the judge." Id. at 606. "If the judge needs to rely on statements and testimony from others regarding their knowledge about the contemptuous acts, the misconduct is no longer considered direct criminal contempt because additional testimony or explanation is necessary." Id. Because the trial judge took testimony from a probation officer regarding Mr. Plank's blood-alcohol level after the officer administered a breathalyzer test, relied on off-the-record statements from the jurors that Mr. Plank smelled of alcohol, and relied on Mr. Plank's own admissions that he drank before attending jury duty and drove himself to the courthouse, the trial court abused its discretion by finding Mr. Plank in direct criminal contempt. Id. at 606-07. "Whenever a judge must take testimony during a criminal contempt proceeding or rely

---

[4]In Pole v. State, 198 So. 3d 961, 965 (Fla. 2d DCA 2016), this court explained that because three justices joined in the portion of the Plank opinion concluding that there is no right to counsel in a direct criminal contempt proceeding as long as any incarceration does not exceed six months, one justice concurred in result only, and three justices dissented to that portion of the majority opinion, "the supreme court, apparently, did not resolve the certified conflict." In contrast, six justices concurred that Mr. Plank's behavior did not constitute direct criminal contempt. Id.

- 6 -

on additional evidence not directly observed by the trial judge, the proceeding is no longer direct criminal contempt but becomes indirect criminal contempt." Id. at 607.

As in Plank, the trial court abused its discretion in this case by finding Mr. Brown in direct criminal contempt. The trial court did not observe Mr. Brown drink alcohol nor behave inappropriately in his presence. The breathalyzer tests occurred outside of the trial court's presence, and the trial court relied on statements made by Mr. Brown's counsel and the prosecutor to find that Mr. Brown was intoxicated.[5] Mr. Brown seems to have untruthfully answered, "No. sir," when the trial court asked whether he was under the influence of alcohol. But when the trial court asked him to show cause, Mr. Brown explained that he drank the previous night and that he interpreted the trial court's questions as asking if he drank alcohol or used drugs that morning.

Moreover, the transcript of the hearing demonstrates that Mr. Brown did not disrupt the court proceedings or embarrass the court—the type of behavior that a finding of criminal contempt is intended to address. See Pugliese v. Pugliese, 347 So. 2d 422, 424 (Fla. 1977) ("[A] criminal contempt proceeding is maintained solely and simply to vindicate the authority of the court or to punish otherwise for conduct offensive to the public in violation of an order of the court"). The prosecutor told the court that she intended to ask for a continuance if she could not negotiate a plea agreement that

_____

[5]We note that the trial court did not receive testimony from the person who conducted the breathalyzer test. It relied on Mr. Brown's counsel's statement that he smelled alcohol in the vicinity of Mr. Brown and his friend as well as on the prosecutor's characterization of an off-the-record comment that Mr. Brown's attorney made to her. Because it is not necessary to the resolution of this case, we do not address the constitutional implications of the trial court's reliance on such information to impose a criminal judgment and sentence of incarceration. See amends. VI, XIV, § 1, U.S. Const.; Art. I, §§ 9, 16, Fla. Const.

morning.  Mr. Brown's intoxication might have delayed this negotiation, but it certainly did not prevent the prosecutor from requesting a continuance.

Based on the foregoing, we reverse Mr. Brown's judgment for direct criminal contempt and remand with directions to vacate Mr. Brown's conviction.


LAROSE, C.J., and BADALAMENTI, J., Concur.